**In re LITE RAY REALTY CORP., Debtor.**

**No. 00–15007 (SMB).**

United States Bankruptcy Court, S.D. New York.

Jan. 16, 2001.

Law Office of Shmuel Klein, P.C., Spring Valley, NY, for debtor.

**MEMORANDUM DECISION AND ORDER DENYING APPLICATION TO RETAIN THE LAW OFFICES OF SHMUEL KLEIN, P.C. AS ATTORNEY FOR THE DEBTOR IN POSSESSION**

STUART M. BERNSTEIN, Chief Judge.

The debtor in possession has moved to retain the Law Offices of Shmuel Klein, P.C., as its attorney, pursuant to 11 U.S.C. § 327(a). The application is unremarkable except for one salient fact: Mr. Klein, its sole member, has been suspended from the practice of law by the State of New York. Despite his suspension, he remains a member of the Southern District bar, and relies on his federal court admission to support his retention.

As discussed below, the law in this Circuit limits the permissible activities of one who, like Klein, is admitted to practice in federal court but not in the host state. For the reasons that follow, the debtor's application is, therefore, denied.

### DISCUSSION

The facts are undisputed. The debtor filed this single asset real estate case on or about October 25, 2000. Shmuel Klein signed the petition as the debtor's attorney, listing his office address as 268 West Route 59 in Spring Valley, New York. Thereafter, by application dated December 4, 2000, the debtor sought to retain Klein as its counsel pursuant to 11 U.S.C. § 327(a).

Klein was formerly admitted to practice in the State of New York, and separately, in the Southern District of New York.

Based, in part, on his conduct several years ago in another case before me, Klein was suspended from the practice of law by the State of New York for five years commencing July 30, 1997. *See Matter of Klein,* 231 A.D.2d 232, 660 N.Y.S.2d 136 (N.Y.App.Div.1997), *appeal dismissed & mot. for leave to appeal denied,* 90 N.Y.2d 929, 664 N.Y.S.2d 262, 686 N.E.2d 1357, *reargument denied,* 91 N.Y.2d 867, 668 N.Y.S.2d 563, 691 N.E.2d 635, *cert. denied,* 524 U.S. 953, 118 S.Ct. 2371, 141 L.Ed.2d 738 (1998).[1] Nevertheless, he remains a member of the Southern District bar, and continues to practice law. During the period of his suspension, he has maintained an office at the Spring Valley, New York address, held himself out to the public as a practitioner of bankruptcy law, and has conducted a regular and substantial bankruptcy practice in this Court.[2]

On December 11, 2000, I issued an order to show cause scheduling a case conference to discuss, *inter alia,* the proposed retention. I questioned how a suspended attorney could render legal advice to a client in connection with a legal proceeding even if he was admitted to practice in the federal court where the proceeding was pending. Klein was given the chance to respond, and thereafter submitted a memorandum of law in support of the application.

## DISCUSSION

◼ Section 327(a) of the Bankruptcy Code authorizes the court to approve the retention of the debtor's attorney provided that he is disinterested and does not hold or represent an interest adverse to the estate. Section 101(4) defines an attorney as one "authorized under applicable law to practice law." It is obvious that Klein is not authorized to practice under the law of New York State. Section 478 of New York's Judiciary Law, N.Y. JUD. LAW § 478 (West Supp.2000), provides that it shall be unlawful for a layperson to practice or appear as an attorney-at-law for another person in a New York court, to render legal services, or to hold himself out to the public or convey the impression he is a licensed practitioner.[3] Section 486 of the Judiciary Law extends these prohibitions to suspended attorneys, and makes any violation a misdemeanor.[4] Further-

---

1. The District of Columbia also suspended Klein following a reciprocal disciplinary proceeding. *See In re Klein,* 747 A.2d 1179 (D.C.Ct.App.2000).

2. According to an affirmation (at ¶ 3) filed on the Court's Electronic Case Filing system on August 22, 2000, in *In re Highgate Equities, Ltd.,* Case No. 00–13637, Klein estimated that he had filed "approximately 100 petitions in this District this year as the attorney of record." The total filings during the period of his suspension likely represent a multiple of that number. Further, in another affirmation filed in support of the debtor in possession's application to retain him as counsel in the same case, he acknowledged that he maintained law offices at 268 West Route 59, Spring Valley, New York.

3. Judiciary Law § 478 states in relevant part:
 It shall be unlawful for any natural person to practice or appear as an attorney-at-law or as an attorney and counselor-at-law for a person other than himself in a court of record in this state, or to furnish attorneys or counsel or an attorney and counsel to render legal services, or to hold himself out to the public as being entitled to practice law as aforesaid,

or in any other manner, or to assume to be an attorney or counselor-at-law, or to assume, use, or advertise the title of lawyer, or attorney and counselor-at-law, or attorney-at-law or counselor-at-law, or attorney, or counselor, or attorney and counselor, or equivalent terms in any language, in such manner as to convey the impression that he is a legal practitioner of law or in any manner to advertise that he either alone or together with any other persons or person has, owns, conducts or maintains a law office or law and collection office, or office of any kind for the practice of law, without having first been duly and regularly licensed and admitted to practice law in the courts of record of this state, and without having taken the constitutional oath....

4. Judiciary Law § 486 states:
 Any person whose admission to practice as an attorney and counselor-at-law has been revoked or who has been removed from office as attorney and counselor-at-law or, being an attorney and counselor-at-law, has been convicted of a felony or has been suspended from practice and has not been duly and regularly

more, the order suspending Klein states that during the period of his suspension, he must desist and refrain from practicing law, appearing in court as an attorney, giving legal advice or opinions or holding himself out in any way as an attorney and counselor-at-law. *In re Klein,* 660 N.Y.S.2d at 139. We may take as a given that if he is retained in this case, he will engage in the unauthorized practice of law unless his admission to practice in the Southern District insulates him from the charge.

▮ As a rule, the licensing and regulation of lawyers falls within the exclusive province of the states. *Leis v. Flynt,* 439 U.S. 438, 442, 99 S.Ct. 698, 58 L.Ed.2d 717 (1979). But while state law determines what constitutes the practice of law, the federal courts decide who may practice before them. *See Sperry v. Florida ex rel Florida Bar,* 373 U.S. 379, 383–84, 83 S.Ct. 1322, 10 L.Ed.2d 428 (1963); 28 U.S.C. § 1654.[5] Disbarment by the state, therefore, does not lead to automatic disbarment by the federal courts. *Matter of Ruffalo,* 390 U.S. 544, 547, 88 S.Ct. 1222, 20 L.Ed.2d 117, *modified on other grounds,* 392 U.S. 919, 88 S.Ct. 2257, 20 L.Ed.2d 1380 (1968); *see Theard v. United States,* 354 U.S. 278, 282–83, 77 S.Ct. 1274, 1 L.Ed.2d 1342 (1957). For example, under the Southern District Court's local rules, S.D.N.Y.R. 1.5(b), the District Court may but is not required to discipline an attorney who has been disciplined by another federal or state court.

▮ This does not mean, however, that a suspended attorney enjoys the same privileges as one licensed by the state provided he remains a member of the local federal court. Rather, his ability to practice in federal court depends upon the

extent of the so-called "federal exception" to the unauthorized practice of law. The exception insulates a lawyer, acting within the scope of an authorization to practice before a federal court, from the charge that he has violated state restrictions on the unauthorized practice of law. *Servidone Constr. Corp. v. St. Paul Fire & Marine Ins. Co.,* 911 F.Supp. 560, 574 (N.D.N.Y.1995)(quoting *In re Peterson,* 163 B.R. 665, 674 (Bankr.D.Conn.1994)). Not surprisingly, research has failed to uncover a factual situation precisely like the current case. Nevertheless, decisions dealing with the limitations on out-of-state attorneys—often involving fee disputes— are analogous. *See Ranta v. McCarney,* 391 N.W.2d 161, 164 (N.D.1986)("An out-of-State lawyer who is not authorized to practice law in this State ... sits in the same position as a suspended attorney previously admitted to practice law in this State.")

The leading case on the issue in this Circuit is *Spanos v. Skouras Theatres Corp.,* 364 F.2d 161 (2d Cir.)(panel decision and decision on reconsideration *en banc*), *cert. denied,* 385 U.S. 987, 87 S.Ct. 597, 17 L.Ed.2d 448 (1966). Spanos, a California attorney, was retained by the defendant in connection with an antitrust suit pending in New York federal district court. Spanos was not a member of either the New York State bar or the federal district court bar. He nonetheless came to New York at the defendant's urging to work on the matter with the defendant's New York lead counsel. *Id.* at 163.

The New York counsel withdrew, but the defendant renewed the retainer agreement with Spanos. *Id.* Spanos continued to represent the defendant, but his services eventually declined. Reading a newspaper one day, he discovered that the

---

reinstated, who does any act forbidden by the provisions of this article to be done by any person not regularly admitted to practice law in the courts of record of this state, unless the judgment, decree or order suspending him shall permit such act, shall be guilty of a misdemeanor.

**5.** Section 1654 states that parties in United States courts "may plead and conduct their own cases personally or by counsel as, by the rules of such courts, respectively, are permitted to manage and conduct causes therein."

case had been settled. *Id.* He demanded the payment of the promised contingency fee, his client refused on the ground that Spanos had engaged in the unauthorized practice of law in New York, and the litigation followed. *Id.*

The district court concluded that Spanos' failure to become a member of the New York bar did not prevent him from recovering the legal fees. *Id.* at 162. A divided panel of the Circuit Court reversed. It agreed with the district court that the federal government has the power to determine who may practice in its courts and receive compensation for services rendered in connection with those matters. *Id.* at 165 (citing *Sperry v. Florida ex rel. Florida Bar,* 373 U.S. 379, 83 S.Ct. 1322, 10 L.Ed.2d 428 (1963)). The majority also recognized that experts in federal law, admitted in other states, may appear in New York federal court in appropriate circumstances. 364 F.2d at 166. The local federal court rules permit admission *pro hac vice,* and express a policy that practice in federal court should not be limited to those admitted in the state. *Id.* Spanos, however, had failed to seek admission *pro hac vice.* The failure could not be overlooked, *id.* at 167, and accordingly, the Court reversed the district court. *Id.*

The Court granted reconsideration *en banc,* and reversed the panel, reinstating the district court's decision. Judge Henry Friendly, the dissenting member of the panel, authored the *en banc* opinion. He agreed that the plaintiff could have recovered if he had sought admission *pro hac vice.* The defendant could not, however, use Spanos' failure to deny the promised fee. When the defendant retained Spanos, his lawyers impliedly assumed the obligation to make the necessary motion, *id.,* and had they done so, the motion would have been granted. *Id.* at 168. The granting of the motion would have insulated Spanos from the charge of unlawful practice of law for his court appearances as well as any legal services reasonably incident to the activities authorized by the district court. *Id.* at 169. The defendant could not render the retainer agreement with Spanos unlawful by discharging him and cutting off his opportunity to seek *pro hac vice* admission. *Id.* Accordingly, he was entitled to his fee.

While this disposed of the case, the Court rejected several other arguments offered in support of the district court's result. It was material to Judge Friendly that Spanos had been engaged to "collaborate" with the defendant's New York lawyers. *Id.* at 170. The Association of the Bar of the City of New York filed an *amicus* brief, urging that the participation of an in-state lawyer should not even be necessary. *Id.* at 171. Rejecting this position, Judge Friendly observed:

> Yet there is also a case for the other side. The disparity in requirements for admission to the bar gives a state maintaining high qualification standards some interest in seeing that its residents do not take action even on a federal right solely on the advice of a lawyer from another state; moreover, what is basically a federal claim or defense may depend in part on an "issue or claim which has its source in state law." *Maternally Yours, Inc. v. Your Maternity Shop, Inc.,* 234 F.2d 538, 541 n. 1 (2 Cir.1956). We thus limit our holding to the situation here presented, where a citizen has invited a duly licensed out-of-state lawyer to work in association with a local lawyer on a federal claim or defense. Whether § 270 of the New York Penal Law [now Judiciary Law § 478] could apply if the client in such a case dispensed with the local attorney or if the matter were one in which federal jurisdiction rested only on diverse citizenship, are questions better left to another day. *And we in no way sanction a practice whereby a lawyer not admitted to practice by a state maintains an office there and holds himself out to give advice to all comers on federal matters.*

*Id.* (emphasis added).

 *Spanos* drew two distinctions that are critical to the pending application.

First, an out-of-state attorney admitted to practice in the federal court may appear in a *specific* federal case if he collaborates with an in-state attorney, but, according to the Court's *dicta,* he cannot appear without in-state counsel. That *dicta* became the holding in *Servidone Constr. Corp. v. St. Paul Fire & Marine Ins. Co.,* 911 F.Supp. 560 (N.D.N.Y.1995). There, an attorney (Goddard) sought to recover his legal fees. Goddard was not admitted in New York but he was admitted in the state of Maryland and in the United States Court of Federal Claims and the Court of Appeals for the Federal Circuit. *Id.* at 565. The fees arose from a litigation in the federal courts where Goddard was admitted. *Id.* at 572.

After first deciding that Goddard was engaged in the practice of law, *id.* at 565–572, the district court examined whether the "federal exception" insulated Goddard from the consequences of his unlawful activities. Relying on the *dicta* in *Spanos,* the district court held that Goddard's failure to collaborate with a licensed New York attorney made the "federal exception" inapplicable. *Id.* at 574–75. Additionally, Goddard maintained his only law office in New York, and there was no evidence that it was established merely for the convenience of representing the client in the subject litigation. *Id.* at 575. Based on these facts, the Court concluded that Goddard had engaged in the unlawful practice of law. *Id.*

Second, *Spanos* distinguished between appearing in a specific federal case, and practicing federal law generally. *Accord In re Peterson,* 163 B.R. at 673 (noting the distinction between the right to practice in a court and the right to practice law generally). Judge Friendly was concerned about the qualifications (*i.e.,* knowledge) of the out-of-state lawyer, particularly since federal and state law issues often overlap. But the potential for trouble exists even if the out-of-state lawyer knows New York law. Any attorney who proposes to limit his practice to federal law creates a dis-

tinction that is unrealistic and impossible to enforce.

Take bankruptcy. Before the client ever files a petition, he and his attorney must discuss the client's other choices since bankruptcy may not be the most appropriate alternative. The attorney must advise the client on numerous state law issues, including the strength of the creditors' claims and any defenses, other forms of debt relief (*e.g.,* compositions, extensions), and the consequences of not choosing bankruptcy or choosing to do nothing. *Attorney Grievance Comm'n of Maryland v. Harris–Smith,* 356 Md. 72, 737 A.2d 567, 573 (1999); *see Kennedy v. Bar Ass'n of Montgomery Cty., Inc.,* 316 Md. 646, 561 A.2d 200, 210 (1989). If the lawyer does not know *or cannot talk* about state law issues, he cannot advise his client competently. Furthermore, if the attorney can only practice bankruptcy, he may be influenced to tilt his advice toward filing for bankruptcy. *Id.;* Charles W. Wolfram, *Sneaking Around in the Legal Profession: Interjurisdictional Unauthorized Practice by Transactional Lawyers,* 36 S. Tex. L.Rev. 665, 698 (1995)("WOLFRAM")("such a lawyer would be motivated to cant advice artificially in a safe direction-away from local law and toward 'authorized law' "). Finally, a general federal practice exception is "impossible to apply and enforce in the real world," *Kennedy v. Bar Ass'n of Montgomery Cty., Inc.,* 561 A.2d at 208; *accord* WOLFRAM, 36 S. Tex. L.Rev. at 697, because proof that the attorney has exceeded the restriction requires an examination of the content of legal advice protected by the attorney-client privilege. *Id.* at 697 n. 99, 561 A.2d 200.

Klein's position is no better than the non-resident attorney's, *see Ranta v. McCarney,* 391 N.W.2d at 164, and the suspension probably makes it worse. WOLFRAM 675 ("it seems clear that a lawyer who has been suspended or disbarred by order of a state court has little hope of persuading a court that practice in

an area of federal law, other than patent law, is permissible") The suspension aside, Klein, like Goddard in *Servidone,* has not collaborated with an in-state attorney in this case, and cannot fly solo.

█ In addition, while the debtor's application has focused attention on this case, Klein has engaged in the very practice that *Spanos* condemned. He maintains a regular office for the general practice of bankruptcy law in New York, his business emanates from that practice, and that practice has required him to appear regularly in this district since his suspension in hundreds of cases by his own admission. His federal court admission may permit him to appear in a specific case in the type of situation described in *Spanos,*[6] but it does not permit him to open a local office and practice generally, even if his practice is limited to bankruptcy. *See, e.g., In re Desilets,* 247 B.R. 660, 670 (Bankr.W.D.Mich.)(admission to Michigan district court did not permit non-resident attorney who was not admitted in Michigan to practice law generally in Michigan), *aff'd,* 255 B.R. 294 (W.D.Mich.2000); *In re Peterson,* 163 B.R. at 675 (attorney admitted in federal district court in Connecticut but not admitted to practice in state of Connecticut could not maintain his sole office in Connecticut and hold himself out to residents of Connecticut as a practitioner in bankruptcy law); *Attorney Grievance Comm'n of Maryland v. Harris–Smith,* 737 A.2d at 573–74 (out-of-state attorney admitted to Maryland district court who maintained a general practice in Maryland limited to bankruptcy matters engaged in the unauthorized practice of law and was subject to discipline by state); *Matter of Perrello,* 270 Ind. 390, 386 N.E.2d 174, 179 (1979)(suspended Indiana attorney admitted to practice in Indiana federal court who maintained an office in Indiana limited to the practice of bankruptcy engaged in unauthorized practice).

Two Arizona cases, involving the same non-resident attorney admitted to practice in the Arizona district court, reached the opposite conclusion. Both, however, are distinguishable or of questionable force. In *In re Mendez,* 231 B.R. 86 (9th Cir. BAP 1999), *aff'd,* 230 F.3d 1367 (9th Cir. 2000), the court overruled the chapter 13 trustee's objection to the payment of the attorney's fee, concluding that he could represent the debtor in the Arizona bankruptcy court even though he wasn't admitted in Arizona. The trustee had failed to prove that the attorney maintained his primary office in Arizona, solicited Arizona residents for bankruptcy business, or engaged in the general practice of law in Arizona. Furthermore, he did not offer evidence on the scope of the attorney's legal activities in Arizona or the extent to which the state and bankruptcy issues may have been interwoven in the dispute. 231 B.R. at 91. In contrast, Klein maintains his primary office in New York, holds himself out to the public as a bankruptcy attorney in New York, and takes on "all comers." Moreover, the meshing of state and bankruptcy issues is immaterial because, as *Spanos* implied and others have said, Klein had to deal with state law issues (whether he did or not) when his client first came for financial triage.

*In re Poole,* 222 F.3d 618 (9th Cir.2000), reached a similar result as *Mendez,* denying the same chapter 13 trustee's motion to force the same attorney to disgorge legal fees in a different case. The Court concluded, given the federal court's authority to decide who may practice before it, that the attorney was "authorized under applicable law" within the meaning of § 101(4) of the Bankruptcy Code to act as the debtor's attorney. *Id.* at 622. The Ninth Circuit distinguished *Spanos* as "completely inapposite," observing that the attorney in *Poole* was admitted in the local district court whereas Spanos was not. *Id.*

6. For example, if Klein is admitted in another state where he maintains his office, it is possible that he could appear in New York federal court in collaboration with a licensed New York lawyer. Obviously, I am not deciding this issue.

Unfortunately, the Court's distinction ignores the thrust of Judge Friendly's opinion. Applying estoppel, he treated Spanos as though he had been admitted *pro hac vice*, and hence, as a lawyer admitted to practice before the federal court. Thus, *Poole* is not persuasive. In any event, I am not bound by either Arizona decision.

Finally, the cases cited by Klein are inapposite. They stand for the proposition that a federal court is not bound by state court or bar association interpretations of ethical rules. *See, e.g., Grievance Committee for the Southern District of New York v. Simels,* 48 F.3d 640 (2d Cir.1995). Here, the issue is the legal effect of the order suspending Klein from practicing law in New York while he remains a member of the Southern District bar. This is purely one of federal law, and does not involve state court or bar association interpretations of ethical rules.

To repeat what has been said, the federal court determines who may practice before it, but that doesn't mean, as Klein implies, that his state suspension does not affect his ability to practice bankruptcy law or appear in this Court. At most, he may only appear in collaboration with a licensed attorney, but he cannot practice law—even bankruptcy law—generally. The debtor's application to retain him stretches the definition of "attorney" too far, and accordingly, it must be denied.

So ordered.