855 A.2d 654

**OFFICE OF DISCIPLINARY COUNSEL, Petitioner**

v.

**Frank J. MARCONE, Respondent.**

Supreme Court of Pennsylvania.

Argued May 14, 2003.

Decided Aug. 16, 2004.

2

Anthony T. Verwey, for Office of Disciplinary Counsel.

Samuel C. Stretton, for Frank J. Marcone.

Before CAPPY, C.J., CASTILLE, NIGRO, NEWMAN, SAYLOR, EAKIN and LAMB, JJ.

## *OPINION*

Chief Justice CAPPY.

In this matter, we consider Petitioner Office of Disciplinary Counsel's (the "ODC") Petition for Adjudication of Contempt filed against Respondent Frank J. Marcone alleging that Mr. Marcone has acted in violation of our July 1995 order suspending him from, *inter alia*, the practice of law. In determining whether the ODC's Petition should be granted, we are necessarily required to analyze the issue of whether an attorney who has been suspended from the practice of law by the Supreme Court of Pennsylvania may nevertheless maintain a law office in the Commonwealth of Pennsylvania for purposes

of practicing before the United States District Court for the Eastern District of Pennsylvania. For the reasons more fully expressed below, we grant ODC's Petition and find Mr. Marcone in contempt of our order suspending him from the practice of law.

The salient facts underlying this matter are not in dispute. Mr. Marcone was admitted to the practice of law in Pennsylvania on June 4, 1963. By order dated July 6, 1995, our Court suspended Mr. Marcone from the practice of law for a period of four years after failing to return a $2,000 bail reimbursement to a client.[1] Specifically, our Court, per curiam, ordered that Mr. Marcone be "suspended from the Bar of the Commonwealth for a period of four years, with credit for the period of suspension previously served" and that "he shall comply with all the provisions of Rule 217, Pa.R.D.E." [2] While more than four years have elapsed since the entry of the July 1995 order suspending Mr. Marcone from the practice of law, Mr. Marcone has not petitioned our Court for reinstatement, and thus, he currently remains under suspension. Pa.R.D.E. 218.

Based upon our suspension of Mr. Marcone, the United States District Court for the Eastern District of Pennsylvania also suspended Mr. Marcone from practice before that court. On September 28, 1998, however, and while still under suspension by our Court, the United States District Court for the Eastern District of Pennsylvania reinstated Mr. Marcone to practice before that court. Evidently, Mr. Marcone remains admitted to practice before that federal district court. By order dated November 26, 1999, the United States Court of Appeals for the Third Circuit, however, suspended Mr. Marcone for four years and until his reinstatement to the practice of law by the Supreme Court of Pennsylvania. According to Mr. Marcone, since his reinstatement by the federal district

1. Mr. Marcone has previously received four informal admonitions, two private reprimands, and a public censure.

2. Mr. Marcone was originally suspended from the practice of law for four years beginning on October 11, 1989. Subsequently, the suspension was vacated on June 11, 1990. The suspension was reinstated by our order of July 6, 1995.

court, he "has restricted his practice to those areas which are permissible pursuant to his federal district court admission." Respondent's Brief at p. 6.

As part of this practice, Mr. Marcone has opened a law office that is located at 127 Chester Pike in Ridley Park, Delaware County, Pennsylvania where he meets with clients and maintains his practice. Answer to Rule to Show Cause, ¶ 16, p. 6. In the window of Mr. Marcone's law office, a sign "Frank J. Marcone, Attorney at Law" rests in the front first floor of the law office. Answer to Rule to Show Cause, ¶ 17, p. 6. Through this office, Mr. Marcone holds himself out as practicing in the federal district court. Answer to Rule to Show Cause, ¶ 31, p. 9. Furthermore, Mr. Marcone asserts that he advises those with whom he meets of his limited federal practice. Respondent's Brief at p. 24. Additionally, Mr. Marcone has a printed letterhead on his stationery which states that his practice is limited to federal practice. Respondent's Brief at p. 6. Finally, Mr. Marcone has represented clients in the United States District Court for the Eastern District of Pennsylvania in, *inter alia*, diversity jurisdiction cases. Answer Rule to Show Cause, ¶¶ 21–23, p. 7. At the time of the filing of his Answer to Rule to Show Cause, Mr. Marcone was actively engaged in approximately 100 cases within the United States District Court for the Eastern District of Pennsylvania or other states where he is admitted pro hac vice. Answer to Rule to Show Cause, ¶ 36, p. 11. Mr. Marcone offers, however, that he has not represented any person or engaged in any matters within the Commonwealth other than matters within the federal district court. Answer to Rule to Show Cause, ¶ 37, p. 11–12.

In light of these facts and Mr. Marcone's maintenance of a law office while under suspension, on November 6, 2002, the ODC filed a Petition for Adjudication of Contempt alleging, *inter alia*, that Mr. Marcone maintained an office for the practice of law in Pennsylvania in violation of this Court's July 6, 1995 order. Thereafter, on December 12, 2002, our Court entered a Rule to Show Cause why the Petition for Adjudication of Contempt should not be granted and Mr. Marcone

found in contempt of our July 6, 1995 order. Mr. Marcone filed an answer to the rule on December 23, 2002. By order dated February 11, 2003, we granted Mr. Marcone's request for briefing and oral argument limited to the issue of whether an attorney, who has been suspended from the practice of law by the Supreme Court of Pennsylvania, can maintain a law office in the Commonwealth for purposes of practicing before the United States District Court for the Eastern District of Pennsylvania.[3]

With this background in grasp, we will consider the parties contentions regarding whether Mr. Marcone is in contempt of our July 6, 1995 order *seriatim*.[4,5] In addressing these arguments, we begin by first recognizing that the polestar of this Court's regulation of attorney conduct in our Commonwealth is its significant responsibility to protect the public in general, and clients in particular, from unfit attorneys, and to uphold the integrity of our legal system. *Office of Disciplinary Counsel v. Keller*, 509 Pa. 573, 506 A.2d 872, 875 (1986). *See also, Office of Disciplinary Counsel v. Grigsby*, 493 Pa. 194, 425 A.2d 730, 733 (1981)(purpose of disciplinary system is to protect the public, the profession, and the

3. Our Court has jurisdiction to consider this matter as a general proposition pursuant to our inherent and exclusive power to supervise the practice of law in our Commonwealth and the conduct of attorneys who are its officers. Pa. Const. art. V, § 10(c)(the Supreme Court has the inherent and exclusive power of supervision of all officers of the judicial branch); Pa.R.D.E. 103 (same). Similarly, whether one is engaging in actions in violation of our orders or Rules is within the exclusive jurisdiction of our Court. Pa. Const. art. V, § 10(c); Pa. R.D.E. 201(a)(3)(exclusive disciplinary jurisdiction of the Supreme Court extends to any formerly admitted attorney with respect to acts subsequent to suspension which amount to the practice of law or constitute a violation of the rules of disciplinary enforcement). *In Re: Jones*, 572 Pa. 235, 814 A.2d 177 (2002).

4. As a general matter, the disobedience of a court order, in the absence of the inability to comply with that order, constitutes contempt. *In Re: Jones*. To establish the failure to comply with a court order, the burden is on the complaining party, here, the ODC, to prove noncompliance by a preponderance of the evidence. *Barrett v. Barrett*, 470 Pa. 253, 368 A.2d 616 (1977).

5. As this contempt matter is currently before our Court in its original jurisdiction, there is no lower tribunal's determination for our review, and thus, there is no applicable standard or scope of review.

courts). This momentous obligation stems from our constitutional mandate of regulating the practice of law in our Commonwealth. Pa. Const. Art. V. Sec. 10(c). It is the *sine qua non* of a healthy and respected profession and of a protected citizenry. Thus, this obligation will be the lens through which we view the arguments advanced by the parties in this case.

In support of its Petition for Adjudication of Contempt, the ODC offers that our Rules of Disciplinary Enforcement strictly prohibit Mr. Marcone from maintaining a law office in Pennsylvania, even if such office is limited to federal practice. According to the ODC, the maintenance of a law office also violates the common law of our Commonwealth, citing to our Court's 1957 decision in *Ginsburg v. Kovrak*, 392 Pa. 143, 139 A.2d 889 (1958).[6] Furthermore, as a matter of public policy, ODC offers that permitting Mr. Marcone to maintain a law office will seriously undermine this Court's ability to protect the public and the profession from unfit attorneys.

Under our Rules of Disciplinary Enforcement, a "formerly admitted attorney" (a status which includes one who has been suspended)[7] may not "engage in any form of law-related

6. ODC places great emphasis upon *Ginsburg v. Kovrak*, 392 Pa. 143, 139 A.2d 889 (1957), *appeal dismissed for want of substantial federal question*, 358 U.S. 52, 79 S.Ct. 95, 3 L.Ed.2d 46 (1958), in which our Court, in a per curiam opinion, prohibited an attorney who was not admitted to the practice of law in Pennsylvania, but admitted in, *inter alia*, the United States District Court of the Eastern District of Pennsylvania, from maintaining an office and practicing law in Philadelphia County and from holding himself out to the public as being entitled to practice law in that county. While ODC's reliance upon *Ginsburg* is justified, our decision in that appeal is of somewhat limited value because the Court's per curiam opinion offers scant analysis as to the underpinnings of its decision. Furthermore, the Court in *Ginsburg* spoke to the admission of an attorney to practice, and this discussion carries less weight today due to the advent of federal bar admission requirements and the discipline of attorneys practicing before federal courts, which did not exist at that time, and which left such admission requirements and attorney regulation solely to the states. *Ginsburg* certainly remains, however, consistent with our determination today regarding the maintenance of a law office by a suspended attorney.

7. Pa.R.D.E. 102 defines "formerly admitted attorney" as "[a] disbarred, suspended, or inactive attorney." Mr. Marcone, is a formerly admitted attorney due to our prior order of suspension.

activities in this Commonwealth . . . ." Pa.R.D.E. 217(j).[8,9] The ODC offers that Rule 217(4)(ii) in particular prohibits a formerly admitted attorney from performing any law-related services from an office that is not staffed, on a full time basis, by a supervising attorney. The ODC acknowledges, however, that this subsection of the Rule does not speak to the maintenance of a law office by a suspended attorney who is admitted before another court. Thus, the question becomes whether under our Rule, an attorney who has been suspended from engaging in any form of law-related activities by the Supreme Court of Pennsylvania is engaging in prohibited law-related activities by maintaining a law office in the Commonwealth for purposes of practicing before the United States District Court for the Eastern District of Pennsylvania.

We have neither addressed what constitutes "any form of law-related activities," nor explored the breadth of that concept. We can say, however, that regardless of the boundaries of "any form of law-related activities," it certainly includes the practice of law. The ABA Model Rules of Professional Conduct do not attempt to define the "practice of law" leaving it to the various jurisdictions. ABA Model Rules of Professional Conduct Rule 5.5. And the states have not come to a uniform approach as to what constitutes the practice of law. *See, e.g., In the Matter of the Application of Mark W.*, 303 Md. 1, 491 A.2d 576, 579 (1985).

In Pennsylvania, while Rule 217 prohibits a formerly admitted attorney from engaging in any form of law-related activities, the Rule does not establish a standard for what constitutes the practice of law. Pa.R.D.E. 217 Note. Likewise, our Court has not attempted to provide a comprehensive state-

---

8. This prohibition on any form of law-related activities does have certain limited exceptions which are not implicated in this matter. *See,* Pa.R.D.E. 217(j)(1)-(3).

9. *See also,* 42 Pa.C.S. § 2524 (setting forth penalty for those who within Commonwealth practice law or hold themselves out as being entitled to practice law without being an attorney at law); 42 Pa.C.S. § 2521 ("[p]ersons admitted to the bar of the courts of this Commonwealth and to practice law pursuant to general rules shall thereby hold the office of attorney at law").

ment of what activities comprise the practice of law, nor have we believed it wise or necessary to engage in the task of defining what the practice of law means for all purposes. *Shortz et al. v. Farrell*, 327 Pa. 81, 193 A. 20, 21 (1937)(attempt to formulate a precise definition of the practice of law would be more likely to invite criticism than to achieve clarity). Thus, as a general proposition, we have explained what specific activities constitute the practice of law on a case-by-case basis.

Our Court has, however, as early as 1937 outlined three broad categories of activities that constitute the practice of law: (1) the instruction and advising of clients in regard to the law so that they may pursue their affairs and be informed as to their rights and obligations; (2) the preparation of documents for clients requiring familiarity with legal principles beyond the ken of ordinary laypersons; and (3) the appearance on behalf of clients before public tribunals in order that the attorney may assist the deciding official in the proper interpretation and enforcement of the law. *Id.* More recently, our Court expressed that the practice of law is implicated by the holding out of oneself to the public as competent to exercise legal judgment and the implication that he or she has the technical competence to analyze legal problems and the requisite character qualifications to act in a representative capacity. *See Dauphin County Bar Association v. Mazzacaro*, 465 Pa. 545, 351 A.2d 229, 232–233 (1976)(considering whether licensed casualty adjuster's representation of third parties constituted the unauthorized practice of law).

We find the aspect of the practice of law that includes the instruction and advising of persons with respect to the law so that they are cognizant of their rights and responsibilities and the related holding oneself out to the public as competent to exercise legal judgment to be particularly relevant to the circumstances in this case. "The core element of practicing law is the giving of advice to a client and placing of oneself in the very sensitive relationship wherein the confidence of the client, and the management of his affairs, is left totally in the hands of the attorney." *In the Matter of*

*Perrello,* 270 Ind. 390, 386 N.E.2d 174, 179 (1979). "The undertaking to minister to the legal problems of another creates the attorney-client relationship without regard to whether the services are actually performed by the one so undertaking the responsibility or are delegated or subcontracted to another." *Id.* Similarly, when a person represents to the public that he has the competence to analyze legal problems and the required qualifications to represent clients, and that person is not adequately trained or regulated, the dangers to the public are manifest. *Dauphin County Bar Association,* 351 A.2d at 232.

■ As noted above, the practice of law is implicated by holding out of oneself to the public as competent to exercise legal judgment and holding out of oneself to the public as being competent in the law. Likewise, advising clients on their legal rights and responsibilities comprises the practice of law. Through the maintenance of a law office within the borders of our Commonwealth, Mr. Marcone, a suspended attorney, holds himself out to the citizens of our Commonwealth as one competent to exercise legal judgment and competent in the law. Similarly, through the maintenance of a law office, Mr. Marcone counsels clients as to their legal rights and obligations. Thus, we conclude that by Mr. Marcone's maintenance of a law office, from which he holds himself out to the public and advises clients as to their legal rights, he has engaged in the practice of law in this Commonwealth.

That Mr. Marcone's maintenance of a law office is limited solely to his practice before the United States District Court for the Eastern District of Pennsylvania does not alter our conclusion.

First, neither our Rules nor our case law have limited the concept of practicing law to Pennsylvania law. Indeed, our Rule speaks in expansive terms. As noted above, "a formerly admitted attorney *may not engage in any form of law-related activities in this Commonwealth* . . . ." Pa.R.D.E. 217(j)(emphasis supplied). Likewise, our case law suggests no such

demarcation. *See Dauphin County Bar Association,* 351 A.2d at 232; *Shortz,* 193 A. at 21.

Additionally, current legal practice consists of a complex and interconnected web of legal knowledge, concerns, strategies, and consequences. More specifically, holding oneself out to the public as engaging in a general federal practice and advising clients as part of a federal practice today necessarily implicates counseling clients on state law issues. State law concerns are the foundation of federal diversity actions. Even federal law matters are in many instances "only a federal overlay to applicable state law." *In re Peterson,* 163 B.R. 665, 673 (Bankr.D.Conn.1994)("[s]tate law issues are inevitably and inextricably intertwined with bankruptcy law issues"); *In re Lite Ray Realty Corp.,* 257 B.R. 150, 155 (Bankr.S.D.N.Y. 2001); *see also, Kennedy v. Bar Association of Montgomery County,* 316 Md. 646, 561 A.2d 200, 210–11 (1989); Samuel Brakel and Wallace Loh, *Regulating the Multistate Practice of Law,* 50 Wash. L.Rev. 699, 736 (1975)(advocating federal admission procedures to increase their consideration of state standards and requirements due to applicability of state laws and procedures in federal courts). Thus, to suggest that because maintenance of an office is limited to federal practice, it does not constitute the practice of law within the borders of a state, is to ignore the realities of current legal practice.[10]

Finally, considerations of public policy undergird our determination. As noted above, this Court's core obligation in regulating attorney conduct is to protect the citizens of our Commonwealth, to secure the public's interest in competent legal representation, and to ensure the integrity of our legal

10. Mr. Marcone is correct when he suggests that the world today is a far cry from that of Chippy Patterson's when an attorney could practice law without an office. *See,* Arthur H. Lewis, The Worlds of Chippy Patterson, (Harcourt, Brace and Company, New York 1960)(describing the life of Chippy Patterson who although born into the world of Philadelphia's privileged and wealthy, rejected his comfortable beginnings to practice law in Philadelphia City Hall where he represented criminal defendants, keeping important legal documents in his hat). Yet, the realities of today's complex legal practice also refute Mr. Marcone's suggestion that the maintenance of a law office dedicated to a federal practice can be viewed in a vacuum.

system. The embarkation of advising a client in legal matters includes decision making regarding the status of potential claims and deciding which claims to pursue. This last aspect of counseling clients is especially relevant, as a suspended attorney maintaining a law office dedicated "exclusively" to the practice of federal matters could cant advice artificially in the direction of the attorney's "limited" practice. Charles W. Wolfram, *Sneaking Around in the Legal Profession: Interjurisdictional Unauthorized Practice By Transactional Lawyers,* 36 S. Tex. L.Rev. 665, 698 (1995). Thus, pragmatically speaking, to permit within our Commonwealth's borders without regulation the maintenance of a law office by a suspended attorney, dedicated to an "exclusive" federal practice, in which such counseling could take place, would be to leave our citizens vulnerable to misguidance and exploitation. Related thereto, limiting the concept of the practice of law to Pennsylvania law, exclusive from federal matters, would be virtually impossible to apply and enforce, *Kennedy,* 561 A.2d at 208, and would defeat our mandate of protecting the public from incompetent or unethical practitioners. Indeed, the operation of a law office by a suspended attorney could be used as a "shield behind which to conduct an unlimited-in-fact law practice." Wolfram, *Sneaking Around in the Legal Profession: Interjurisdictional Unauthorized Practice By Transactional Lawyers,* 36 S. Tex. L.Rev. at 698. *See also, In re Lite Ray Realty Corp.,* 257 B.R. at 155 (any attorney proposing to limit his practice to federal law creates a distinction that is unrealistic and impossible to enforce).

In sum, by our order of July 6, 1995, Mr. Marcone was suspended from engaging in any form of law-related activities in this Commonwealth, which includes the practice of law. Pa.R.D.E. 217. Through the maintenance of a law office, Mr. Marcone, although suspended, holds himself out to the citizens of our Commonwealth as one competent to exercise legal judgment and as one competent in the law, and counsels clients as to their legal rights and obligations, even though for purposes of practicing before the United States District Court for the Eastern District of Pennsylvania. We find that by his

maintenance of such a law office, Mr. Marcone has engaged in the practice of law. This is in violation of our Rule 217, and thus, our order of July 6, 1995 prohibiting him from engaging in, *inter alia,* the practice of law. Therefore, we conclude that Mr. Marcone is in contempt of our prior order.[11]

Our determination regarding the scope of Rule 217 and our conclusion that a suspended attorney maintaining a law office in our Commonwealth for purposes of practicing before a federal court is engaging in the practice of law are buttressed by similar decisions from our sister states. The few courts that have addressed issues akin to the one *sub judice* have been consistently and notably hostile to the notion of an attorney who is not a member of the state bar maintaining a law office for purposes of a federal practice. These courts have concluded that maintaining such an office constitutes the unauthorized practice of law for purposes of state law. *See, e.g., In the Matter of Perrello,* 386 N.E.2d at 179 (attorney suspended from practice of law in Indiana engaged in unauthorized practice of law when maintaining law office for purposes of federal practice); *Attorney Grievance Commission of Maryland v. Harris–Smith,* 356 Md. 72, 737 A.2d 567 (1999)(attorney maintaining an office and advising clients for practice of federal and non-Maryland law constituted the unauthorized practice of law); *Kennedy v. Bar Association of Montgomery County,* 316 Md. 646, 561 A.2d 200 (1989)(same). *See also, Spanos v. Skouras Theatres Corp.,* 364 F.2d 161, 171 (2d. Cir.1966)(not sanctioning practice whereby attorney "not admitted to practice by a state maintains office there and holds himself out to give advice to all comers on federal matters"); *In re Lite Ray Realty Corp.,* 257 B.R. at 156 (federal court admission does not permit attorney to open a local office and practice generally, even if practice limited to

11. We emphasize that the issue before us today is a narrow one. We are in no fashion speaking to Mr. Marcone's ability to be admitted to the United States District Court for the Eastern District of Pennsylvania or to represent clients in that court. The sole issue before us is whether Mr. Marcone's maintenance of a law office within our Commonwealth constitutes contempt of our prior order suspending him from all law-related activities which include, *inter alia,* the practice of law in our Commonwealth. We find that it does.

bankruptcy); *In re Peterson*, 163 B.R. at 673 (attorney admitted in federal court in Connecticut could not maintain his sole office in that state and hold himself out to residents· of Connecticut as a practitioner in bankruptcy law); *In re Roel*, 3 N.Y.2d 224, 165 N.Y.S.2d 31, 144 N.E.2d 24 (1957)(maintaining law office and giving advice solely on Mexican law enjoined as unauthorized practice of law in New York). *Accord*, Wolfram, *Sneaking Around in the Legal Profession: Interjurisdictional Unauthorized Practice By Transactional Lawyers*, 36 S. Tex. L.Rev. at 698.

Mr. Marcone, however, raises a number of arguments as to why we should not find him in contempt of our prior order. We find none of these contentions to be meritorious.

First, Mr. Marcone cites to 28 U.S.C. § 2071(a)(the Supreme Court and all courts established by ·act of Congress may prescribe rules for the conduct of their business) and 28 U.S.C. § 1654 ("In all courts of the United States, the parties may plead and conduct their own cases personally or by counsel as, by the rules of such court, respectively, are permitted to manage and conduct causes therein") and argues that these federal statutes indicate the authority of the federal court to regulate lawyers admitted to federal practice. Furthermore, Mr. Marcone offers Local Civil Rule 83.6, VII(i) of the United States District Court for the Eastern District regarding admission, which states:

Any attorney who is reinstated may practice before this court notwithstanding the refusal or failure of any state court to reinstate said attorney to practice. However, reinstatement to practice before this court does not authorize an attorney to practice in any other jurisdiction, and no attorney shall hold out himself or herself as authorized to practice law in any jurisdiction in which the attorney is not admitted.

According to Mr. Marcone, under these statutes and local rule, he has the right to practice before the federal district court regardless of his status as an attorney in Pennsylvania. Mr. Marcone asserts that relevant federal statutes

and rules establish that the regulation of federal practice is within the authority of the federal courts and the right to practice "logically" includes the maintenance of a law office for that practice.[12]   Thus, there exists no authority on the part of our Court to prohibit his maintenance of a law office dedicated to a federal practice.   He also makes a seemingly separate argument that to find him in contempt would violate the Supremacy Clause of the United States Constitution.   As both of these arguments are related and, although not stated as such, sound in preemption, we will construe these arguments as a single assertion that it is solely for the federal courts to

**12.**   Mr. Marcone relies upon *In re Desilets*, 291 F.3d 925 (6th Cir.2002) in support of his conclusion that it is solely for the federal courts to regulate the lawyers admitted to federal practice.   Mr. Marcone's reliance on *Desilets* is misplaced for a number of reasons.   First, that decision dealt with whether an individual was an "attorney" for purposes of the bankruptcy code with respect to practice in a Michigan federal bankruptcy court and did not deal with the maintenance of a law office in a state by a suspended attorney.   The *Desilets* court concluded that federal standards control admission to the federal bar. Nothing herein is contrary to this principle.   Second, that decision did not deal with an attorney that was suspended from the practice of law in the state in which he wished to practice.   Indeed, the attorney at issue was admitted to the bar of the state of Texas.   Finally, to the extent that *Desilets* can be read to be contrary to our decision today, we are not bound by the decisions of lower federal courts.   As noted above, we find that the discussions of the practice of law contained in *In re Peterson*, 163 B.R. at 673 and *In re Lite Ray Realty Corp.*, 257 B.R. at 155, more accurately reflect the realities of the practice of law and bankruptcy law in particular.

Mr. Marcone also offers as "[o]f interest" the United States Supreme Court's decision in *Sperry v. Florida*, 373 U.S. 379, 83 S.Ct. 1322, 10 L.Ed.2d 428 (1963).   *Sperry* dealt with a lay person who represented patent applicants before the United States Patent Office.   The United States Supreme Court held that the state of Florida could not prohibit this layperson from representing individuals with respect to patent applications.   The Court's decision was based upon a federal statute which specifically permits the Commissioner of Patents to authorize practice before the Patent Office by non-lawyers.   Unlike the situation at bar, *Sperry* dealt with the ability of a layperson, expressly authorized by federal statute, to work in a specialized area of federal law—patent law, before an agency, the Patent and Trademark Office, which had a long tradition of regulating practitioners before it.   *Sperry*, 373 U.S. at 387–90, 83 S.Ct. 1322.   Thus, it is clearly distinguishable from the circumstances in this case regulating a suspended attorney's maintenance of a law office and does not compel a result different from the one we reach today.

regulate the practice of law of its members to the exclusion of our Court.

The Supremacy Clause of the United States Constitution prohibits states from enacting laws that are contrary to the laws of our federal government: "This Constitution and the Laws of the United States ... shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding." U.S. Const. art. VI, cl.2. It is through this clause that the United States Congress may preempt state law. In determining whether a state regulation is preempted by federal law, we start "with the assumption that the historic police powers of the States [are] not to be superseded by ... Federal Act unless it [is] the clear and manifest purpose of Congress." *Cipollone v. Liggett Group*, 505 U.S. 504, 516, 112 S.Ct. 2608, 120 L.Ed.2d 407 (1992)(citing *Rice v. Santa Fe Elevator Corp.*, 331 U.S. 218, 230, 67 S.Ct. 1146, 91 L.Ed. 1447 (1947)). There are three ways in which a state law may be preempted. First, state law may be preempted where the United States Congress enacts a provision which expressly preempts the state enactment. *Pacific Gas & Electric Co. v. State Energy Resources Conservation and Development Comm'n*, 461 U.S. 190, 204, 103 S.Ct. 1713, 75 L.Ed.2d 752 (1983). Likewise, preemption may be found where Congress has legislated in a field so comprehensively that it has implicitly expressed an intention to occupy the given field to the exclusion of state law. *Schneidenwind v. ANR Pipeline Co.*, 485 U.S. 293, 299–300, 108 S.Ct. 1145, 99 L.Ed.2d 316 (1988). Finally, a state enactment will be preempted where a state law conflicts with a federal law. *Id.* Such a conflict may be found in two instances, when it is impossible to comply with both federal and state law, *Florida Lime & Avocado Growers, Inc. v. Paul*, 373 U.S. 132, 142–43, 83 S.Ct. 1210, 10 L.Ed.2d 248 (1963), or where the state law "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Hines v. Davidowitz*, 312 U.S. 52, 67, 61 S.Ct. 399, 85 L.Ed. 581 (1941).

First, Mr. Marcone fails to offer any statute or rule that expressly preempts our state regulation of the practice of law in general or of Mr. Marcone's maintenance of a law office within our borders in particular. Furthermore, the statutes and rule offered by Mr. Marcone fall far short of establishing that the federal enactments are so comprehensive that they demonstrate that Congress has intended to occupy regulation of the field to the exclusion of our state. Simply because federal statutes allow for the promulgation of rules, and permit one to conduct cases by counsel in federal courts, certainly does not evidence a Congressional intent to divest state courts of their authority to regulate the practice of law by suspended attorneys within their borders. Likewise, while under the local rules for the United States District Court for the Eastern District of Pennsylvania an attorney may be reinstated to "practice before this court notwithstanding the refusal of a state court to reinstate the attorney to practice," E.D.Pa.R.Civ.P. 83.6 VII(I), this does not evidence an intent to prohibit our Court from regulating the maintenance of a law office by a suspended attorney for the proffering of himself to the public or for client consultation and advice. In light of the historical licensing and regulation of attorneys by the states within their respective jurisdictions, *Leis v. Flynt,* 439 U.S. 438, 99 S.Ct. 698, 58 L.Ed.2d 717 (1979), and the failure of Mr. Marcone to offer a federal statute or rule that even minimally suggests an intention by Congress to limit the breadth of our Rules in this regard, we simply cannot find support for the proposition that Congress has expressed the sweeping intention of occupying the field to the exclusion of the states.

Finally, we find no conflict between the federal statutes and rules and our state rules. While an attorney's admission to federal court may permit him to represent clients in federal court, it is not impossible or even inconsistent in the least for Marcone to comply with our Court's authority to regulate a suspended attorney's maintenance of a law office within our borders from which he holds himself out to the public and consults with clients, even if "limited" to a federal practice. *In re Lite Ray Realty Corp.,* 257 B.R. at 156 (federal court

admission does not permit attorney to open a local office and practice generally, even if practice limited to bankruptcy); *In re Peterson*, 163 B.R. at 675 (attorney admitted in federal court in Connecticut could not maintain his sole office in that state and hold himself out to residents of Connecticut as a practitioner in bankruptcy law); *see also, In the Matter of Perrello*, 270 Ind. 390, 386 N.E.2d 174 at 179; *Attorney Grievance Commission of Maryland v. Harris–Smith, supra.*

For these same reasons, we cannot say that our regulation of the maintenance of a law office significantly frustrates the accomplishment of the purposes of Congress. While regulation of the maintenance a law office through which one holds himself out to the public and counsels clients may place some burden on one who has been suspended from the practice of law in a particular state but who is nevertheless admitted before a federal court, our regulation of those who maintain a law office within our borders simply does not, without more, result in conflict pre-emption. *Accord, Northwest Central Pipeline Corp. v. State Corporation Commission of Kansas*, 489 U.S. 493, 109 S.Ct. 1262, 103 L.Ed.2d 509 (1989)(some burden on federal regulatory goals does not constitute conflict pre-emption). Indeed, we find that in these circumstances, the regulation of a suspended attorney's law office where he holds himself out to the public and counsels clients is an area in which the applicable federal statutes and rules and this Court's Rules coexist. Based upon the above, we conclude that our regulation of Mr. Marcone's maintenance of a law office within our Commonwealth is not preempted by federal statute or local rule, and thus, does not run afoul of the Supremacy Clause of the United States Constitution.

██ Mr. Marcone also raises two additional bases, grounded in the United States Constitution, which he asserts precludes our finding him in contempt. In a somewhat confusing argument, Mr. Marcone offers that finding him in contempt for maintaining a law office would burden interstate commerce and constitute economic protectionism in violation of the Commerce Clause of the United States Constitution. Specifically, he contends that prohibiting him from maintaining an office

limited to practice within the federal system would amount to economic protectionism and have an impact on interstate commerce "since there is no local benefit for the state prohibition since the federal court is regulating Mr. Marcone's conduct." Respondent's Brief at p. 27.

The United States Constitution provides that "Congress shall have Power ... to regulate Commerce ... among the several States." U.S. Const. art. I, § 8. While the Commerce Clause expressly speaks only to the ability of Congress to regulate interstate commerce, it has been interpreted to contain "an implied limitation on the power of the States to interfere with or impose burdens on interstate commerce." *Western & Southern Life Ins. Co. v. State Bd. of Equalization of California*, 451 U.S. 648, 652, 101 S.Ct. 2070, 68 L.Ed.2d 514 (1981). This limitation has been sometimes coined the "negative" or "dormant" Commerce Clause. Although Mr. Marcone does not couch it as such, it is that aspect of the Commerce Clause that is implicated in this case. The dormant Commerce Clause "prohibits economic protectionism—that is, regulatory measures designed to benefit in-state economic interests by burdening out-of-state competitors." *New Energy Co. of Indiana v. Limbach*, 486 U.S. 269, 273, 108 S.Ct. 1803, 100 L.Ed.2d 302 (1988).

We find that no such benefit or burdens are implicated in this matter. First, it is Mr. Marcone as a suspended in-state Pennsylvania attorney that has the in-state interest. He does not explain how his in-state economic interests are benefited by burdening out-of-state competitors. As a suspended in-state attorney, we cannot perceive in these circumstances how his interests are benefited to the detriment of out-of-state competitors. Thus, as Mr. Marcone has not established that there exists a burden on interstate commerce that favors in-state interests, Mr. Marcone's assertion of a Commerce Clause violation fails. *Accord, Tolchin v. Supreme Court of the State of New Jersey*, 111 F.3d 1099 (3rd Cir.1997)(finding New Jersey's bona fide office requirement does not discriminate against out-of-state attorneys).

Mr. Marcone's final constitutional argument is based upon the First Amendment to the United States Constitution. Mr. Marcone offers without analysis that "the prohibition of having an office could directly affect the right of association that is inherent in the First Amendment analysis." Respondent's Brief at p. 29. Mr. Marcone, however, does not claim that our determination seeks to suppress speech or associational rights that the Commonwealth finds distasteful or to quash his political views, *see NAACP v. Button,* 371 U.S. 415, 83 S.Ct. 328, 9 L.Ed.2d 405 (1963), or to prohibit mutual assistance in asserting legal rights. *See United Transportation Union v. Michigan Bar,* 401 U.S. 576, 91 S.Ct. 1076, 28 L.Ed.2d 339 (1971). Rather, enforcement of our July 1995 order, which would include the prohibition from maintaining a law office whereby one holds himself out to the public as competent in the law and counsels clients as to their legal rights and obligations while suspended from the practice of law, may impact Mr. Marcone's procurement of remunerative employment, a matter which is only marginally affected with First Amendment concerns. *See Ohralik v. Ohio State Bar Assn.,* 436 U.S. 447, 98 S.Ct. 1912, 56 L.Ed.2d 444 (1978); *NAACP,* 371 U.S. at 439–443, 83 S.Ct. 328.

The First Amendment to the United States Constitution states in relevant part, "Congress shall make no law ... abridging the freedom of speech, ... or the right of the people peaceably to assemble...." U.S. Const. amend. I. It is well settled, however, that the government may limit the exercise of a citizen's First Amendment rights where government regulations are aimed to address legitimate concerns and not designed to control or limit the content of First Amendment freedoms. *See Konigsberg v. State Bar of California,* 366 U.S. 36, 50–51, 81 S.Ct. 997, 6 L.Ed.2d 105 (1961)(withholding of bar membership constitutional where applicant refused to answer questions regarding membership in Communist Party thus thwarting investigation into his "qualifications."); *see also, Roberts v. United States Jaycees,* 468 U.S. 609, 623, 104 S.Ct. 3244, 82 L.Ed.2d 462 (1984)(right to associate for expressive purposes).

With respect to restrictions on speech, a governmental regulation will be upheld, as a general proposition, if four criteria are met: (1) the regulation is within the constitutional power of the state; (2) it furthers an important or substantial governmental interest; (3) the governmental interest is unrelated to the suppression of free speech; and (4) the incidental restriction on alleged first amendment freedoms is no greater than essential to the furtherance of that interest. *United States v. Albertini,* 472 U.S. 675, 687, 105 S.Ct. 2897, 86 L.Ed.2d 536 (1985); *United States v. O'Brien,* 391 U.S. 367, 376, 88 S.Ct. 1673, 20 L.Ed.2d 672 (1968). Similarly, the First Amendment right to associate is not absolute and infringements on that right may be justified by regulations adopted to serve a compelling state interest, unrelated to the suppression of ideas, that cannot be achieved through means significantly less restrictive of associational freedoms. *See Roberts,* 468 U.S. at 623, 104 S.Ct. 3244 (1984).

Thus, even assuming, arguendo, that Mr. Marcone has demonstrated that a First Amendment right is implicated in his maintaining a law office while under suspension, our regulation of Mr. Marcone's maintenance of a law office does not run afoul of the First Amendment. First, as noted above, a state's constitutional power to regulate the practice of law is well established. *Konigsberg.* Second, our Court has not only an important and substantial interest, but a compelling interest, in regulating the practice of law within our borders: protecting our citizens from those unfit to practice law. *See Keller; Grigsby; see also, Goldfarb v. Virginia State Bar,* 421 U.S. 773, 792, 95 S.Ct. 2004, 44 L.Ed.2d 572 (1975)(recognizing that states have a compelling interest in the practice of professions within their boundaries). Here, the prohibition of maintaining a law office is legitimate and justified to prevent those who are suspended from the practice of law from holding themselves out to the public as competent to exercise legal judgment and as being competent in the law, and from counseling and advising clients on their legal rights and responsibilities through the maintenance of a law office within our Commonwealth. Third, such prohibition is clearly not

designed to limit the content of any First Amendment freedoms. It is not targeted at ideas but is aimed at preventing harm to our citizens. *Accord, Konigsberg,* 366 U.S. at 49–51, 81 S.Ct. 997. Finally, we find that this restriction is no greater than absolutely necessary to further the significant governmental interest in protecting the public and the profession. As noted above, we are not by our decision today dictating whom the federal courts may admit to practice or who may practice in federal court. We conclude that our determinations that the maintenance of a law office in which one holds himself out to the public as competent in the law and counsels clients with respect to their legal rights and obligations constitutes the practice of law and that Mr. Marcone, by maintaining such a law office is in contempt of our July 1995 order do not violate any First Amendment right of free speech or free association.[13]

In conclusion, we hold that by maintaining a law office in the Commonwealth, by which he holds himself out to the citizens of our Commonwealth as one competent to exercise legal judgment and as one competent in the law, and counsels clients as to their legal rights and obligations, Mr. Marcone is in contempt of our order of July 6, 1995 suspending him from the practice of law.[14] Thus, we grant the ODC's Petition for Adjudication of Contempt and hereby order that Mr. Marcone:

(1) Shall fully comply with the provisions of Rule 217 of the Rules of Disciplinary Enforcement pertaining to suspended attorneys;

(2) Shall not maintain an office for the practice of law of any kind within the Commonwealth of Pennsylvania whereby he

---

**13.** Mr. Marcone also suggests that finding him in contempt "would appear to implicate" due process and equal protection concerns, but he fails to offer any meaningful analysis or argument in support of these assertions, thus, we reject such claims.

**14.** Mr. Marcone has also filed a "Motion to Dismiss the Petition for Adjudication for Contempt" asserting, *inter alia,* that he had no notice that his conduct was contemptuous. For the reasons discussed above finding Mr. Marcone's maintenance of a law office to constitute the practice of law in violation of our July 1995 order, we deny Mr. Marcone's motion.

holds himself out to the citizens of our Commonwealth as one competent to exercise legal judgment and as one competent in the law, and counsel clients as to their legal rights and obligations until such time that he is reinstated to the practice of law by our Court;

(3) Shall not hold himself out as an attorney authorized to practice law in this Commonwealth until such time that he is reinstated to the practice of law by our Court; and

(4) Shall surrender to the Disciplinary Board of the Supreme Court of Pennsylvania:

(a) any certificate issued to him by the Court Administrator of Pennsylvania under Rule 219(e) (relating to periodic assessment of attorneys; voluntary inactive status);

(b) any certificate of good standing issued under Pennsylvania Bar Admission Rule 201(d) (relating to certification of good standing); and

(c) any certificate of admission issued under Pennsylvania Bar Admission Rule 231(d)(30) (relating to action by the Prothonotary).

It is further ordered that:

(5) This matter is referred to the Disciplinary Board for a hearing to recommend the appropriate sanction.

Former Justice LAMB did not participate in the decision of this case.