Jerry and Christine KRENTZ,
Appellants,

v.

CONSOLIDATED RAIL CORPO-
RATION & PA Department of
Transportation, Appellees.

Superior Court of Pennsylvania.

Argued May 19, 2004.

Filed Dec. 7, 2004.

Reargument Denied Feb. 11, 2005.

Joseph Savoca, Lancaster and Erik M. Hume, Lancaster, for appellants.

Craig J. Staudenmaier, Harrisburg, for appellees.

Before: DEL SOLE, P.J., KELLY and CAVANAUGH,[*] JJ.

DEL SOLE, P.J.

¶ 1 This is an appeal from the order entering judgment in favor of Appellee Conrail. The action arose from a 1995 accident that occurred when Appellant[1] drove under a train stopped at a road crossing and was injured when the train moved, dragging his car with it. Appellants raised claims of negligence for failure to warn and negligence *per se* against Conrail. The trial court dismissed the negli-

---

[*] Judge Cavanaugh did not participate in this decision.

1. References to Appellant singularly refer to Jerry L. Krentz.

gence for failure to warn claim following Conrail's preliminary objections in the nature of a demurrer, finding it barred by the Occupied Crossing Rule; the trial court granted Conrail summary judgment on the negligence *per se* claim, finding it preempted by federal law. Appellants challenge both conclusions on appeal.[2] We affirm in part and reverse and remand in part.

¶ 2 Appellants first challenge the trial court's dismissal of their claim that Conrail was negligent for failure to warn approaching drivers of the train's presence on the tracks. We use the following standard of review when there is a challenge to the sustaining of preliminary objections in the nature of a demurrer:

> All material facts set forth in the complaint as well as all inferences reasonably deducible therefrom are admitted as true for [the purpose of this review.] The question presented by the demurrer is whether, on the facts averred, the law says with certainty that no recovery is possible. Where a doubt exists as to whether a demurrer should be sustained, this doubt should be resolved in favor of overruling it.

*Price v. Brown,* 545 Pa. 216, 680 A.2d 1149, 1151 (1996).

¶ 3 The trial court found the negligence claim was precluded by application of the Occupied Crossing Rule, which essentially states that a railroad need not warn approaching drivers that a train is currently on the tracks at a crossing; the presence of the train itself is sufficient warning. *Sprenkel v. Conrail,* 446 Pa.Super. 377, 666 A.2d 1099, 1101 (1995); *Cella*

*v. Pennsylvania Railroad Co.,* 364 Pa. 82, 70 A.2d 638, 639 (1950).

¶ 4 Appellants first argue the rule does not apply to this case, where the train was stopped at the time Appellant drove under it. Appellants cite *Cella,* claiming that it "cannot be read for the proposition that a train stopped blocking a crossing enjoys the benefit of the Occupied Crossing Rule." Appellants' Brief at 7. We disagree. The *Cella* court specifically held:

> Whether the freight car was moving or at a standstill is immaterial on the issue of negligence. The reason for the rule is that common experience dictates that an object as large as a freight car is, of itself, sufficient notice of its presence to warn any person using the highway with ordinary care.

*Cella,* 70 A.2d at 639 (citation omitted).

¶ 5 Appellants next claim the specific circumstances of this case require application of an exception to the Occupied Crossing Rule because the circumstances created an especially hazardous situation. While admitting that poor weather conditions and lack of visibility are insufficient to trigger an exception, Appellants maintain these factors, combined with "the presence of a stopped, black, propane tanker car which was riding high enough to allow Appellants' headlights to beam under it, ultimately constitutes unusual or peculiar circumstances that render the crossing ultra hazardous or dangerous." Appellants' Brief at 8. Appellants cite *Wink v. Western Maryland Railway Co.,* 116 Pa.Super. 374, 176 A. 760 (1935), for the existence of such an exception, but do not support their argument for application

2. Although this appeal properly lies from the order granting summary judgment on the negligence *per se* claim and entering judgment in favor of Conrail, both that order and the earlier order dismissing the negligence for failure to warn claim are subject to review in this appeal, the latter having been rendered final by the former. We further note the Pennsylvania Department of Transportation was granted summary judgment on the claims against it; it is not a party to this appeal.

of such an exception with citation to any case law. The *Wink* court cited a Minnesota case, wherein the following language appeared to allow for the existence of an exception:

> Undoubtedly cases do and will arise where a railroad company, because of peculiar and unusual circumstances rendering the situation extra-hazardous, must in the exercise of reasonable care do things which are not required by statute.

*Wink,* 176 A. at 762 (citation omitted).

¶ 6 We find no error in the trial court's refusal to apply such an exception to this case; the factors listed by Appellants are either irrelevant to the application of the Occupied Crossing Rule or insufficient to trigger the application of the exception. *See Sprenkel,* 666 A.2d at 1100, 1102 (holding rain, fog and darkness did not constitute ultrahazardous conditions at the crossing) (citing *Wink,* 176 A. 760 (1935) (no recovery where plaintiff collided with train at crossing in fog) and *Yolton v. Pennsylvania Railroad Co.,* 368 Pa. 429, 84 A.2d 501 (1951) (plaintiff's inability to see train at crossing due to fog, darkness and oncoming headlights did not create ultrahazardous condition)).

■ ¶ 7 Finally, Appellants argue this Court should revise or eliminate the Occupied Crossing Rule because the advent of comparative negligence has rendered it obsolete. We may not do so, although we do not disagree such action, through other channels, may be warranted. As another panel of this Court stated in *Sprenkel:*

> It probably would require a relatively small effort on the part of a railroad to place reflectors or other minimal lighting systems on the sides of its cars in order to offer some additional warning to the approaching highway traveler. However, while requiring such precautions on certain "vehicles", our relevant

statutes expressly exclude from these requirements "devices used exclusively on rails or tracks." 75 Pa.C.S. §§ 102; 4301–4308. Under these circumstances, any change in the law in this area must come either from the legislature or our supreme court, which has perpetuated the occupied crossing rule.

*Sprenkel,* 666 A.2d at 1102.

■ ¶ 8 Appellants' second issue challenges the trial court's grant of summary judgment on the basis that the statute underlying their negligence *per se* claim is preempted by federal law.

¶ 9 On an appeal from a grant of summary judgment, a reviewing court must examine the record in a light most favorable to the nonmoving party, accepting as true all well-pleaded facts and giving that party benefit of all reasonable inferences which can be drawn from those facts. *Hoffman v. Brandywine Hosp.,* 443 Pa.Super. 245, 661 A.2d 397 (1995). The Superior Court will reverse a grant of summary judgment only when the trial court has committed an error of law or abused its discretion. *Butterfield v. Giuntoli,* 448 Pa.Super. 1, 670 A.2d 646 (1995).

¶ 10 The Pennsylvania statute underlying the negligence *per se* claim provides as follows:

> It shall be a summary offense for any railroad to obstruct or block up the passage of any crossings of a highway, or obstruct such crossings, with its rolling stock. If any engineer, or any member of the train crew, or other agent of any such railroad, shall obstruct or block up such crossings, he shall be guilty of a summary offense.

18 Pa.C.S.A. § 6907.

¶ 11 The trial court found this statute was preempted by the Federal Rail Safety

Act, 49 U.S.C. § 20101 *et seq.* ("FRSA"), which contains the following provision:

National uniformity of regulation

Laws, regulations, and orders related to railroad safety shall be nationally uniform to the extent practicable. A State may adopt or continue in force a law, regulation, or order related to railroad safety until the Secretary of Transportation prescribes a regulation or issues an order covering the subject matter of the State requirement. A State may adopt or continue in force an additional or more stringent law, regulation, or order related to railroad safety when the law, regulation, or order—

(1) is necessary to eliminate or reduce an essentially local safety hazard;

(2) is not incompatible with a law, regulation, or order of the United States Government; and

(3) does not unreasonably burden interstate commerce.

49 U.S.C. § 20106.[3]

¶ 12 The Pennsylvania Supreme Court recently discussed the basic principles of federal preemption, explaining as follows:

The Supremacy Clause of the United States Constitution prohibits states from enacting laws that are contrary to the laws of our federal government: "This Constitution and the Laws of the United States ... shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding." U.S. Const. art. VI, cl. 2. It is through this clause that the United States Congress may preempt state law. In determining whether a state regulation is preempted by federal law, we start "with the assumption that the historic police powers of the States [are] not to be superseded by ... Federal Act unless it [is] the clear and manifest purpose of Congress." There are three ways in which a state law may be preempted. First, state law may be preempted where the United States Congress enacts a provision which expressly preempts the state enactment. Likewise, preemption may be found where Congress has legislated in a field so comprehensively that it has implicitly expressed an intention to occupy the given field to the exclusion of state law. Finally, a state enactment will be preempted where a state law *conflicts* with a *federal* law. Such a conflict may be found in two instances, when it is impossible to comply with both federal and state law, or where the state law "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress."

*Office of Disciplinary Counsel v. Marcone,* 855 A.2d 654, 664 (Pa.2004) (citations omitted).

¶ 13 First, we note the FRSA regulates the field of railroad safety; the Pennsylvania statute is concerned with highway safety. Thus, we do not find the scope of the FRSA encompasses that of the Pennsylvania statute.

¶ 14 The trial court found preemption on the following basis:

In this case, the train was stationary, blocking the crossing, while the "run around"[4] was performed. The train crew then had to perform federally man-

---

**3.** This statute was amended in 2002 to add language concerning homeland security.

**4.** The "run around" is a maneuver which "requires the engine to detach from the train, run alongside the train on an adjacent track, and re-couple with the train at the other end, allowing the train to reverse directions. This is necessary on the track where the accident occurred as it is a dead-end spur." Trial Court Opinion, at 12/31/02, at 1.

dated air-brake testing before the train could be moved. The testing of the brakes is governed by the FRSA. In order for Conrail to comply with the Pennsylvania law, they would have to alter the train's length or forego the air-brake testing, both of which are governed by federal law.

Trial Court Opinion, 12/31/02, at 6.

¶ 15 While we agree the FRSA has exclusive authority over matters such as the regulation of train speed, train length, and air-brake tests on trains, we disagree that the Pennsylvania statute necessarily implicates any of these areas.

¶ 16 All parties agree that the statute does not prohibit railroads from ever, even momentarily, blocking crossings, but rather prohibits such blocking for an unreasonable length of time. The determination of the reasonableness of the length of the blocking is a question for the jury. *Blaskey v. Pennsylvania Railroad Co.*, 138 Pa.Super. 465, 10 A.2d 891, 893–94 (1940). The trial court's analysis presupposes the blocking in this case was unreasonable; while we do not reach the opposite conclusion, we find it possible that the blocking, even if wholly attributable to federal safety regulatory requirements, was for a reasonable length of time. We additionally note that, although there was evidence introduced in this case that the blocking concerned train length and safety requirements, a blocking may be for a reason unrelated to any area of federal regulation. Thus, we find the trial court's holding erroneous.

¶ 17 Accordingly, we reverse the trial court's grant of summary judgment on this claim, and remand for further proceedings consistent with this opinion. We note Conrail additionally argues the statute is preempted by the federal Interstate Commerce Commission Termination Act. The trial court did not reach this issue because it found preemption under the FRSA; we are therefore without any holding on this issue to review. On remand, if Conrail so desires, it should be permitted to raise this issue again so that the trial court may consider it in light of our holding on the issue it previously found dispositive.

¶ 18 Order entering summary judgment on the negligence for failure to warn claim affirmed. Order dismissing Appellants' claim for negligence *per se* reversed and remanded for further proceedings. Jurisdiction relinquished.