910 A.2d 20

**Jerry and Christine KRENTZ**

**v.**

**CONSOLIDATED RAIL CORPORATION
& PA Department of Transportation**

*Appeal of Consolidated Rail Corporation.*

**Jerry and Christine Krentz**

**v.**

**Consolidated Rail Corporation & PA
Department of Transportation**

**Cross Appeal of Jerry and Christine Krentz.**

Supreme Court of Pennsylvania.

Argued May 10, 2006.

Decided Nov. 21, 2006.

Craig J. Staudenmaier, Esq., Lucinda Carolyn Glinn, Esq., Harrisburg, for Consolidated Rail Corporation.

Nancy L. Winkelman, Esq., Philadelphia, for amicus curiae Association of American Railroads.

Joseph Edward Savoca, Esq., Erik M. Humme, Esq., Julie Brown Miller, Esq., Gary Gene Krafft, Esq., Harrisburg, for Jerry and Christine Krentz.

Daniel R. Goodemote, Esq., Harrisburg, for PA Department of Transportation.

Joseph Edward Savoca, Esq., Erik M. Hume, Esq., Julie Brown Miller, Esq., Gary Gene Krafft, Esq., Harrisburg, for Jerry and Christine Krentz.

Craig J. Staudenmaier, Esq., Lucinda Carolyn Glinn, Esq., Harrisburg, for Consolidated Rail Corporation.

Nancy L. Winkelman, Esq., Philadelphia, for Association of American Railroads.

BEFORE:CAPPY, C.J., and CASTILLE, NEWMAN, SAYLOR, EAKIN and BAER, JJ.

## OPINION

Justice NEWMAN.

We are required to answer two questions that this Court has not yet had occasion to address: (1) whether the Occupied Crossing Rule should be abandoned as a judicial anachronism in light of the adoption of the Comparative Negligence Act;[1] and (2) whether the Federal Rail Safety Act[2] preempts 18 Pa.C.S. § 6907, the Pennsylvania "blocked crossing" statute. For the reasons that follow, we answer the first question in the negative and the second in the affirmative. Accordingly, we affirm in part and reverse in part the Order of the Superior Court that affirmed in part and reversed in part the Order of the Court of Common Pleas of Lancaster County (trial court).

## FACTS AND PROCEDURAL HISTORY

We quote the facts giving rise to the instant action, which are essentially undisputed, as the trial court stated them:

On January 13, 1995, Jerry Krentz [Krentz] was driving south on North Water Street in Lititz, PA when he drove into a Conrail freight train. The train was stationary and completely blocking the railroad crossing. According to [Krentz], he actually drove under a black tanker car before he realized there was a train on the track. Shortly after [Krentz] struck the train, it began to move and he was dragged some distance before the engineer became aware of the accident and stopped the train. [Krentz] alleges that he received a variety of injuries as a result of the accident. . . .

At the time of the accident, the train was performing a "run around". This maneuver requires the engine to detach from the train, run alongside the train on an adjacent track, and re-couple with the train at the other end, allowing the train to reverse directions. This is necessary on the track where the accident occurred as it is a dead-end spur.

1. 42 Pa.C.S. § 7102.

2. Act of Oct. 16, 1970, P.L. 91–458, *as amended,* 49 U.S.C. §§ 20101–55.

*Krentz v. Pa. Dep't of Transp.,* No. 2361–1995, at 1 (Pa. C.P. Lancaster Dec. 31, 2002) (hereinafter "trial ct. Op.") (spacing modified).

On March 15, 1996, Krentz and his wife, Christine Krentz (collectively, "the Krentzes") filed a Complaint raising claims of, *inter alia,*[3] negligence for failure to warn (Count I)[4] and negligence *per se* (Count II) against Consolidated Rail Corporation (Conrail), which owned and operated the train that Krentz struck on January 13, 1995. Conrail filed Preliminary Objections in the nature of a demurrer, which the trial court: (1) sustained with respect to Count I, thereby dismissing the Krentzes' claim of negligence for failure to warn; but (2) overruled with respect to Count II. In an Order issued on August 7, 1996, the trial court cited our decision in *Cella v. Pennsylvania Railroad Co.,* 364 Pa. 82, 70 A.2d 638, 639 (1950), for the principle known as the Occupied Crossing Rule, according to which a railroad owes motorists no legal duty to warn of the presence of its train at a railroad crossing.

Thereafter, several years ensued, during which time the parties conducted discovery and offered various pretrial motions. Finally, on August 22, 2002, Conrail filed a Motion for Summary Judgment with respect to Count II, arguing that 18 Pa.C.S. § 6907 (Section 6907), which prohibits trains from blocking railroad crossings in Pennsylvania, was preempted by both the Federal Rail Safety Act ("FRSA" or "Act") and the Interstate Commerce Commission Termination Act (ICCTA).[5] On December 31, 2002, the trial court granted Conrail's Motion, thereby dismissing the remainder of the Krentzes' Complaint. Without reaching the issue of whether Section

3. In addition, the Krentzes raised a loss of consortium claim against Conrail as well as the Pennsylvania Department of Transportation (PennDOT), but these derivative claims are not presently before us.

4. The Krentzes also sued PennDOT for negligence for failure to warn, but the trial court ultimately dismissed PennDOT on summary judgment by Order filed October 7, 2003.

5. Act of Dec. 29, 1995, P.L. 104–88, *as amended,* 49 U.S.C. §§ 10101–16106. Among other things, the ICCTA abolished the Interstate Commerce Commission and replaced it with the Surface Transportation Board, an independent agency within the U.S. Department of Transportation.

6907 conflicts with the ICCTA, the trial court held that the FRSA preempts Section 6907. In his Opinion, Judge Louis J. Farina reasoned that, in order to comply with Section 6907, Conrail would have had to alter the length of its train or forego brake system testing, both of which are governed by federal regulations issued pursuant to the FRSA.

The Krentzes appealed from the Order of the trial court granting summary judgment in favor of Conrail, challenging the dismissal of Count II. In a published Opinion filed on December 7, 2004, a unanimous panel[6] of the Superior Court reversed the trial court with respect to Count II but affirmed with respect to Count I. *Krentz v. Consol. Rail Corp.*, 865 A.2d 889 (Pa.Super.2004).[7]

The Superior Court first approved of the trial court's reliance on the Occupied Crossing Rule. Quoting the decision of a previous panel in *Sprenkel v. Consolidated Rail Corp.*, 446 Pa.Super. 377, 666 A.2d 1099, 1102 (Pa.Super.1995), *petition for allowance of appeal denied*, 544 Pa. 634, 675 A.2d 1251 (Pa.1996), President Judge Del Sole, writing for the court, noted that "any change in the law in this area must come either from the legislature or our supreme court, which has perpetuated the occupied crossing rule." *Krentz*, 865 A.2d at 892 (quoting *Sprenkel*, 666 A.2d at 1102). Further, noting the existence of the Rule's exception for ultrahazardous circumstances, the Superior Court found "no error in the trial court's refusal to apply such an exception to this case." *Id.* (determining that "the factors listed by [the Krentzes] are either irrelevant to the application of the Occupied Crossing Rule or insufficient to trigger the application of the exception"). Accordingly, the Superior Court affirmed the August 7, 1996

---

**6.** While Judge Cavanaugh was a member of the panel that heard the appeal, he did not participate in its decision.

**7.** As the Superior Court noted:

> Although this appeal properly lies from the order granting summary judgment on the negligence *per se* claim and entering judgment in favor of Conrail, both that order and the earlier order dismissing the negligence for failure to warn claim are subject to review in this appeal, the latter having been rendered final by the former.

*Krentz*, 865 A.2d at 891 n. 2.

Order of the trial court sustaining the Preliminary Objections of Conrail, thereby dismissing the Krentzes' claim of negligence for failure to warn.

With respect to Count II, the Superior Court first drew a distinction between the FRSA, which "regulates the field of railroad safety," and Section 6907, which "is concerned with highway safety." *Id.* at 893. The Superior Court then proceeded explicitly to reject the rationale of the trial court and noted the possibilities of a jury's finding that: (1) the train in the instant case blocked the crossing for a reasonable length of time, "even if wholly attributable to federal safety regulatory requirements;" and (2) in a future case, if not in this one, "a blocking may be for a reason unrelated to any area of federal regulation." *Id.* at 894. Accordingly, the Superior Court reversed the December 31, 2002 Order of the trial court dismissing the Krentzes' claim of negligence *per se* and remanded the matter for trial.[8]

Both Conrail and the Krentzes petitioned this Court for allowance of appeal from the Order of the Superior Court. We granted their cross appeals on December 29, 2005.

## DISCUSSION

### I. Count I: Negligence for Failure to Warn

The presently applicable standard of review is well settled:

An appellate court should affirm an order of a trial court ... sustaining preliminary objections in the nature of a demurrer where, when all well-pleaded material facts set forth in the complaint and all inferences fairly deducible from those facts are accepted as true, the plaintiff is not entitled to relief. The court need not, however, accept any of the complaint's conclusions of law or argumentative allegations.

---

8. Noting that it was without a holding to review as to whether the ICCTA preempted Section 6907, the Superior Court did not reach that issue. *Krentz*, 865 A.2d at 894. Similarly, this question is not before us today.

*Small v. Horn,* 554 Pa. 600, 722 A.2d 664, 668 (1998) (internal citation omitted). "Where a doubt exists as to whether a demurrer should be sustained, this doubt should be resolved in favor of overruling it." *Price v. Brown,* 545 Pa. 216, 680 A.2d 1149, 1151 (1996).

In sustaining Conrail's Preliminary Objections to the Krentzes' claim of negligence for failure to warn, the trial court invoked the Occupied Crossing Rule (OCR). On appeal, the Krentzes urge us to abrogate the OCR, which, according to the Krentzes, "conflicts with the express provisions of the Comparative Negligence Act." (Brief of the Krentzes as Appellants at 7). Should we decide to uphold the OCR, the Krentzes argue in the alternative that the OCR is presently inapplicable in light of the ultrahazardous circumstances surrounding Krentz's accident.

### A. Occupied Crossing Rule (OCR)

Pursuant to the Occupied Crossing Rule, "a railroad company cannot ordinarily be found negligent because it failed to station guards or light the car, or otherwise give warning of its presence in the highway." *Cella v. Pa. R. Co.,* 364 Pa. 82, 70 A.2d 638, 640 (1950).[9] The rationale for the Rule is that "common experience dictates that an object as large as a freight car is, of itself, sufficient notice of its presence to warn any person using the highway with ordinary care." *Id.* at 639.

The OCR is as securely affixed to our jurisprudence as train tracks are to the land that they traverse. *See Wilson v. Pa. R. Co.,* 421 Pa. 419, 219 A.2d 666, 669 n. 1 (1966); *Hogg v. Bessemer & Lake Erie R. Co.,* 373 Pa. 632, 96 A.2d 879, 884–85 (1953); *Yolton v. Pa. R. Co.,* 368 Pa. 429, 84 A.2d 501, 503 (1951); *Cella, supra; Pa. R. Co. v. Driscoll,* 336 Pa. 310, 9 A.2d 621, 630–31 (1939); *Everetts v. Pa. R. Co.,* 330 Pa. 321, 198 A. 796 (1938); *see also Dollison v. Baltimore & Ohio R. Co.,* 446 Pa. 96, 284 A.2d 704, 706 (1971) (noting the existence

---

**9.** Notwithstanding the Krentzes' argument to the contrary (*see* Brief of the Krentzes as Appellants at 15), "[w]hether the freight car was moving or at a standstill is immaterial" to the applicability of the OCR. *Cella,* 70 A.2d at 639.

of the OCR and citing *Yolton* ). The Superior Court applied the OCR as recently as 1995 in *Sprenkel v. Consolidated Rail Corp.,* 446 Pa.Super. 377, 666 A.2d 1099 (1995), *petition for allowance of appeal denied,* 544 Pa. 634, 675 A.2d 1251 (1996).

As the Krentzes note in their Brief, the decisions of this Court invoking the OCR all predate the General Assembly's adoption in 1978 of the doctrine of comparative negligence, thereby abolishing the former regime of contributory negligence. Thus:

> In all actions brought to recover damages for negligence resulting in death or injury to person or property, the fact that the plaintiff may have been guilty of contributory negligence shall not bar a recovery by the plaintiff or his legal representative where such negligence was not greater than the causal negligence of the defendant or defendants against whom recovery is sought, but any damages sustained by the plaintiff shall be diminished in proportion to the amount of negligence attributed to the plaintiff.

42 Pa.C.S. § 7102(a).

Presently, the Krentzes argue that the continued viability of the OCR is inconsistent with the fact that, pursuant to 42 Pa.C.S. § 7102(a), a plaintiff's negligence is no longer a complete bar to a tort action. The Superior Court considered this same argument in *Sprenkel,* where it felt constrained to apply the OCR, noting that "any change in the law in this area must come either from the legislature or our supreme court, which has perpetuated the occupied crossing rule." *Sprenkel,* 666 A.2d at 1102. The Superior Court felt similarly constrained in the instant case by our consistent application of the OCR. *See Krentz,* 865 A.2d at 892 (quoting the above language from *Sprenkel*).

A *prima facie* negligence claim requires the plaintiff to show that: (1) the defendant had a duty to conform to a certain standard of conduct; (2) the defendant breached that duty; (3) such breach caused the injury in question; and (4) the plaintiff incurred actual loss or damage. *Phillips v. Cricket Lighters,* 576 Pa. 644, 841 A.2d 1000, 1008 (2003). In

the duty to warn context, merely to consider the question of causation assumes that the plaintiff already has established the first element of his claim, namely, that the defendant owed the plaintiff a duty to warn. *Demmler v. SmithKline Beecham Corp.*, 448 Pa.Super. 425, 671 A.2d 1151, 1155 (1996), *petition for allowance of appeal denied*, 546 Pa. 655, 684 A.2d 557 (1996) (emphasis added) (internal quotation marks omitted); *Lineberger v. Wyeth*, 894 A.2d 141, 150 (Pa.Super.2006); *accord Mindala v. Am. Motors Corp.*, 90 Pa.Cmwlth. 366, 495 A.2d 644, 645 (1985) (*en banc* ), *aff'd*, 518 Pa. 350, 543 A.2d 520 (1988) (citing *Rinaldi v. Giblin*, 70 Pa.Cmwlth. 253, 452 A.2d 1126 (1982)) ("[A] Township may not be held liable for failure to warn the Commonwealth of a missing traffic control sign on a state highway in the absence of a statute imposing such a duty."). Thus, a claim alleging that the defendant failed to warn the plaintiff of the risk of harm, like any negligence action, presupposes the existence of a duty owed by the defendant to the plaintiff. *See Gibbs v. Ernst*, 538 Pa. 193, 647 A.2d 882, 890 (1994).

Whereas duty is a question of whether **any** liability may attach to the defendant for the plaintiff's harm, comparative negligence is a method for determining **how much** responsibility should be allocated to the defendant in light of the plaintiff's conduct. Whether, in theory, a particular defendant may be held liable to the plaintiff for any role the defendant may have played in causing an accident is a legal question to be determined by the court. *R.W. v. Manzek*, 585 Pa. 335, 888 A.2d 740, 746 (2005); *Sharpe v. St. Luke's Hosp.*, 573 Pa. 90, 821 A.2d 1215, 1219 (2003). The factual issue of the plaintiff's role in causing his own harm is irrelevant unless and until it is determined that the defendant may be held liable if he helped to cause that harm. *See R.W.*, 888 A.2d at 746 ("The initial element in any negligence cause of action is the first: that the defendant owes a duty of care to the plaintiff.").

Therefore, as the Superior Court noted in *Sprenkel,* "the enactment of the Comparative Negligence Act does not change the well established rule that negligence cannot be

found where the law does not impose a duty." *Sprenkel v. Consol. Rail Corp.*, 446 Pa.Super. 377, 666 A.2d 1099, 1102 (1995). When a motorist approaches a railroad crossing that is occupied by a train,[10] whether that train is traveling or stationary, the only duties involved are those of the motorist, namely: (1) "to drive at a speed which would enable him to stop within the assured clear distance ahead;" and (2) "to stop, look and listen before entering upon the crossing." *Hogg v. Bessemer & Lake Erie R. Co.*, 373 Pa. 632, 96 A.2d 879, 884 (1953); *accord Wilson v. Pa. R. Co.*, 421 Pa. 419, 219 A.2d 666, 671 (1966); *Yolton v. Pa. R. Co.*, 368 Pa. 429, 84 A.2d 501, 504 (1951) ("[T]he driver must keep such control of his car as will enable him to stop and avoid the obstructions which fall within his view.").[11]

Notwithstanding the General Assembly's adoption of the comparative negligence regime, motorists in this Commonwealth still have a statutorily imposed duty not to

drive a vehicle at a speed greater than is reasonable and prudent under the conditions and having regard to the actual and potential hazards then existing, nor at a speed greater than will permit the driver to bring his vehicle to a stop within the assured clear distance ahead. Consistent with the foregoing, every person shall drive at a safe and appropriate speed when approaching and crossing an intersection or railroad grade crossing. . . .

75 Pa.C.S. § 3361. Likewise, the common law "stop, look, and listen" rule has survived the Legislature's abolishment of

---

**10.** In contrast, the law does impose a duty on railroads to warn of **approaching** trains. *Wilson v. Pa. R. Co.*, 421 Pa. 419, 219 A.2d 666, 670 (1966); *Johnson v. Pa. R. Co.*, 399 Pa. 436, 160 A.2d 694, 697 (1960); *Yolton v. Pa. R. Co.*, 368 Pa. 429, 84 A.2d 501, 503 (1951). The duty to warn of approaching trains, however, is presently inapplicable; as the Krentzes admit in their Complaint, "a Conrail freight train was, in fact, stopped on the tracks at the North Water Street crossing." (Reproduced Record (R.R.) at 17a, ¶ 11).

**11.** Even though it is sufficient for present purposes that Conrail lacked a duty to warn Krentz that its train was occupying the crossing, we note that Krentz admitted when deposed that he failed either to stop before the crossing or to look to the right or left before proceeding through it. (*See* R.R. at 87a–88a).

contributory negligence. *See Marks v. Swayne,* 549 Pa. 336, 701 A.2d 224, 225–26 (1997) (noting the "affirmative duties on the part of [ ] plaintiffs to stop, look, and listen" at railroad crossings).

Accordingly, we now hold that the Occupied Crossing Rule remains as valid today as it was when the former regime of contributory negligence prevailed.[12] We thus proceed to determine whether the OCR is presently inapplicable pursuant to its exception for ultrahazardous circumstances.[13]

### B. Ultrahazardous Exception to the OCR

 The courts of this Commonwealth have consistently recognized an exception to the OCR in cases involving ultrahazardous conditions. As early as 1935, the Superior Court noted that "[u]ndoubtedly cases do and will arise where a railroad company, because of peculiar and unusual facts and

12. Although other jurisdictions have not been of one mind as to the effect of the adoption of comparative negligence on state occupied crossing rules, we note that our present holding is consistent with the continued viability of such rules in several of our sister states. *See Dunn v. Baltimore & Ohio R. Co.,* 127 Ill.2d 350, 130 Ill.Dec. 409, 537 N.E.2d 738, 744 (1989) (holding that the Illinois legislature's adoption of comparative negligence "does not expand or otherwise alter the duty owed by a railroad to motorists approaching a standing train at a crossing"); *see also King v. Ill. Cent. R.R.,* 337 F.3d 550 (5th Cir.2003) (applying Mississippi's occupied crossing rule notwithstanding the state's adherence to comparative negligence); *Hurst v. Union Pac. R.R. Co.,* 958 F.2d 1002 (10th Cir.1992) (applying Oklahoma's occupied crossing rule notwithstanding the state's adherence to comparative negligence); *Dietz v. Atchison, Topeka & Santa Fe Railway,* 16 Kan. App.2d 342, 823 P.2d 810, 817 (1991) ("As plaintiffs have failed to prove defendants had any additional duty to warn beyond the warning presented by the presence of the train on the track, defendants were not negligent and the rules of comparative negligence do not apply."); *but see Fla. Power Corp. v. Webster,* 760 So.2d 120 (Fla.2000) (abolishing Florida's "standing train doctrine" in light of the state's adoption of comparative negligence).

13. Conrail briefly argues that "to the extent that the Krentzes seek this Court to impose duties upon railroads to increase visibility of black railcars occupying rail-highway crossings, such duties would be preempted by federal law." (Brief of Conrail as Appellee at 20 (citing regulations issued pursuant to the Federal Rail Safety Act)). Nevertheless, because we hold that Pennsylvania law imposes no duty on a railroad company to warn of a train's presence at a crossing, we need not consider whether the Federal Rail Safety Act would preempt such a duty if it existed.

circumstances rendering the situation extrahazardous, must in the exercise of reasonable care do things which are not required by statute." *Wink v. W. Md. Railway Co.*, 116 Pa.Super. 374, 176 A. 760 (1935); *accord Wilson v. Pa. R. Co.*, 421 Pa. 419, 219 A.2d 666, 669 n. 1 (1966) (noting that a railroad need not take extra precautions "unless there is evidence showing exceptional danger at" a particular crossing); *Sprenkel*, 666 A.2d at 1102 (citing *Wilson*).

Presently, the Krentzes allege the following six circumstances as sufficient in combination to trigger the ultrahazardous exception to the OCR: (1) the darkness of night; (2) fog; (3) the incline of North Water Street; (4) the black color of the train car; (5) the height of the train car; [14] and (6) the position of a motorist on the other side of the tracks with his headlights shining toward Krentz.

With the sole exception of the fifth of these circumstances, this Court was presented with these exact conditions in *Yolton* and took explicit notice of each one. *Yolton*, 84 A.2d at 502, 504. In holding that these circumstances were insufficient to trigger the ultrahazardous exception to the OCR, we noted that "[t]he failure to stop, look and listen is not excused by proving that at the time it was dark or foggy or snowing, or that the crossing was dimmed by dusk." *Yolton*, 84 A.2d at 504; *Santore v. Reading Co.*, 170 Pa.Super. 57, 84 A.2d 375, 379 (1951) (quoting *Wink*, 176 A. at 760 ("[N]otwithstanding road and weather conditions, it is the duty of an automobile driver to have his car under such control that he may discover a grade crossing or any other obstacle in his immediate path in time to enable him to stop within the range of his lights, or turn the car to avoid danger.")). The Superior Court followed *Yolton* in *Sprenkel*, which affirmed the dismissal of the failure to warn claim of a plaintiff who alleged that rain, fog, and darkness prevented her from observing the train that she struck. *Sprenkel*, 666 A.2d at 1102.

**14.** Krentz alleges that his headlights shone underneath the train car due to the extent of its elevation above ground.

The additional factor of the height of the train car is not a sufficient basis to distinguish the instant case from *Yolton.* The ultrahazardous exception to the OCR is generally reserved for cases in which it is the railroad crossing itself, rather than the train car occupying the crossing, that is virtually imperceptible. When a motorist does not "have adequate reason to know that [he is] about to cross a railroad," then "the duty to 'stop, look and listen' at that point [i]s not cast upon [him]." *Kindt v. Reading Co.,* 352 Pa. 419, 43 A.2d 145, 147 (1945). "A railroad company that places a crossing at a point where it cannot be seen by the traveler until he is practically committed to passing over it, cannot use the stop, look and listen sign as a badge of immunity from liability for accidents occurring as the result of non-visibility." *Johnson v. Pa. R. Co.,* 399 Pa. 436, 160 A.2d 694, 696 (1960); *see also Fallon v. Penn Cent. Transp. Co.,* 444 Pa. 148, 279 A.2d 164, 167 (1971) (recognizing "a special duty of care" on the part of a railroad toward motorists at a crossing with "a dangerously limited view").

In contrast, application of the ultrahazardous exception due solely to inclement nighttime weather would be inconsistent with the duties of every motorist never to "drive a vehicle at a speed greater than is reasonable and prudent under the conditions and having regard to the actual and potential hazards then existing," 75 Pa.C.S. § 3361, and always to stop, look, and listen for the presence of a train when approaching a railroad crossing, *see Marks v. Swayne, supra.* Were this Court to apply the exception in such cases, we would suspend these duties "when needed most and practically destroy" them. *Great Lakes Forwarding Corp. v. Pa. R. Co.,* 375 Pa. 325, 100 A.2d 612, 615 (1953).

Consequently, we hold that the trial court did not err in dismissing, on Conrail's Preliminary Objections, the Krentzes' claim of negligence for failure to warn. We proceed to determine whether the trial court erred in dismissing, on summary judgment, the Krentzes' claim of negligence *per se* against Conrail.

## II. Count II: *Negligence* Per Se

Pursuant to Pennsylvania Rule of Civil Procedure 1035.2:

After the relevant pleadings are closed, but within such time as not to unreasonably delay trial, any party may move for summary judgment in whole or in part as a matter of law

(1) whenever there is no genuine issue of any material fact as to a necessary element of the cause of action or defense which could be established by additional discovery or expert report, or

(2) if, after the completion of discovery relevant to the motion, including the production of expert reports, an adverse party who will bear the burden of proof at trial has failed to produce evidence of facts essential to the cause of action or defense which in a jury trial would require the issues to be submitted to a jury.

Pa.R.C.P. 1035.2. In reviewing the December 31, 2002 Order of the trial court dismissing Count II against Conrail, this Court must view the record in the light most favorable to the Krentzes as the non-moving party and resolve all doubts as to the existence of a genuine issue of material fact against Conrail as the moving party. *Murphy v. Duquesne Univ. of the Holy Ghost,* 565 Pa. 571, 777 A.2d 418, 429 (2001). As the inquiry involves solely questions of law, review by this Court is *de novo. Phillips v. Cricket Lighters,* 576 Pa. 644, 841 A.2d 1000, 1004–05 (2003).

The Krentzes' negligence *per se* claim is based on Conrail's alleged violation of Section 6907, which provides as follows:

### § 6907. Obstructing public crossings

It shall be a summary offense for any railroad to obstruct or block up the passage of any crossings of a highway, or obstruct such crossings, with its rolling stock. If any engineer, or any member of the train crew, or other agent of any such railroad, shall obstruct or block up such crossings, he shall be guilty of a summary offense.

18 Pa.C.S. § 6907. The parties do not dispute that, at the time of the accident, the Conrail train was "stationary and

fully occupying the crossing." (Brief of Conrail as Appellant at 5; *accord* R.R. at 17a, ¶ 11). The obstruction of a railroad crossing by a train in violation of Section 6907 constitutes *prima facie* evidence of negligence on the part of the offending railroad company. *See Coleman v. Dahl*, 371 Pa. 639, 92 A.2d 678, 679–80 (1952) (holding as such with respect to the precursor statute to Section 6907); *Todd v. Phila. & Reading Railway Co.*, 201 Pa. 558, 51 A. 332 (1902) (same).

## A. Conrail's Preemption Defense

As a defense to the Krentzes' claim of negligence *per se*, Conrail argues that the FRSA, which gives the U.S. Secretary of Transportation broad powers to promote railroad safety, preempts Section 6907. As we recently explained in *Office of Disciplinary Counsel v. Marcone*, 579 Pa. 1, 855 A.2d 654, 664 (2004), the doctrine of preemption is grounded in the United States Constitution:

> The Supremacy Clause of the United States Constitution prohibits states from enacting laws that are contrary to the laws of our federal government: "This Constitution and the Laws of the United States ... shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding." U.S. Const. art. VI, cl. 2. It is through this clause that the United States Congress may preempt state law.

We proceeded in *Marcone* to identify the three types of preemption that the United States Supreme Court has recognized: (1) express preemption, where the federal law includes a provision that expressly preempts the state statute; (2) field preemption, where "Congress has legislated in a field so comprehensively that it has implicitly expressed an intention to occupy the given field to the exclusion of state law," *id.*; and (3) conflict preemption, where the state statute either precludes compliance with the federal law or "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress," *id.* (internal quotation marks omitted).

■ Invariably, the critical question in any preemption analysis is whether Congress intended that the federal enactment supersede state law. *La. Pub. Serv. Comm'n v. FCC*, 476 U.S. 355, 369, 106 S.Ct. 1890, 90 L.Ed.2d 369 (1986); *Shaw v. Delta Air Lines*, 463 U.S. 85, 95, 103 S.Ct. 2890, 77 L.Ed.2d 490 (1983); *C.B. ex rel. R.R.M. v. Commonwealth*, 567 Pa. 141, 786 A.2d 176, 182 (2001). If a federal statute contains an express preemption provision, then the focus of the preemption inquiry must be the plain wording of that provision, which generally contains the most reliable evidence as to whether Congress intended to preempt state law. *CSX Transp. v. Easterwood*, 507 U.S. 658, 664, 113 S.Ct. 1732, 123 L.Ed.2d 387 (1993). "[W]hen that provision provides a reliable indicium of congressional intent with respect to state authority, there is no need to infer congressional intent to pre-empt state laws from the substantive provisions of the legislation." *Cipollone v. Liggett Group, Inc.*, 505 U.S. 504, 517, 112 S.Ct. 2608, 120 L.Ed.2d 407 (1992) (internal citation and quotation marks omitted).

Congress enacted the FRSA in 1970 in an attempt "to promote safety in every area of railroad operations and reduce railroad-related accidents and incidents." 49 U.S.C. § 20101. Section 106 of the Act provides as follows:

### § 20106. National uniformity of regulation

Laws, regulations, and orders related to railroad safety and laws, regulations, and orders related to railroad security shall be nationally uniform to the extent practicable. A State may adopt or continue in force a law, regulation, or order related to railroad safety or security until the Secretary of Transportation (with respect to railroad safety matters), or the Secretary of Homeland Security (with respect to railroad security matters), prescribes a regulation or issues an order covering the subject matter of the State requirement. A State may adopt or continue in force an additional or more stringent law, regulation, or order related to railroad safety or security when the law, regulation, or order—

 (1) is necessary to eliminate or reduce an essentially local safety or security hazard;

 (2) is not incompatible with a law, regulation, or order of the United States Government; and

 (3) does not unreasonably burden interstate commerce.

49 U.S.C. § 20106. Therefore, the express preemption provision of the FRSA applies if: (1) the Executive Branch has taken an action that "cover[s] the subject matter" of the state enactment; and (2) the state enactment fails to satisfy all three requirements enumerated in Section 106 of the Act.

 Pursuant to the FRSA, then, we first ask whether the federal government has issued a regulation or order that "cover[s] the subject matter" of Section 6907. In interpreting this phrase, the United States Supreme Court [15] explained as follows:

> To prevail on the claim that [ ] regulations have pre-emptive effect, [the party advocating preemption] must establish more than that they "touch upon" or "relate to" that subject matter, for "covering" is a more restrictive term which indicates that pre-emption will lie only if the federal regulations substantially subsume the subject matter of the relevant state law. *See* Webster's Third New International Dictionary 524 (1961) (in the phrase "policy clauses covering the situation," cover means "to comprise, include, or embrace in an effective scope of treatment or operation").

*Easterwood*, 507 U.S. at 664–65, 113 S.Ct. 1732 (internal citation omitted); *accord Norfolk S. Railway Co. v. Shanklin*, 529 U.S. 344, 352, 120 S.Ct. 1467, 146 L.Ed.2d 374 (2000).

Since the Act's adoption, the Secretary of Transportation has promulgated a multitude of regulations under the authority of the FRSA. Included among these are a series of rules requiring and specifying inspection and testing for train brake systems. *See* 49 C.F.R. §§ 232.201–232.219. We thus proceed to determine whether these regulations "cover[ ] the subject

---

**15.** The decisions of the United States Supreme Court interpreting federal statutes are binding on this Court. *See Purple Orchid, Inc. v. Pa. State Police*, 572 Pa. 171, 813 A.2d 801, 806 (2002).

matter" of Section 6907 within the meaning of the express preemption provision of the FRSA.

In arguing that Congress did not intend for the FRSA to preempt state blocked crossing statutes like Section 6907, the Krentzes focus on the object or purpose of Section 6907:

> Contrary to the express purpose of the FRSA, which is to promote safety in railroad operations, 49 U.S.C.A. § 20101, Pennsylvania courts consistently have recognized that "one of the objects of the [Blocked Crossing] statute was to facilitate the movement of traffic on the highway"; the "orderly and safe passage of vehicles is incident to that general purpose." *Coleman v. Dahl,* 371 Pa. 639, 92 A.2d 678, 680 (1952), *citing Blaskey v. Pennsylvania R. Co.,* 138 Pa.Super. 465, 10 A.2d 891 (1940).

(Brief of the Krentzes as Appellees at 8–9 (alteration in original)). Similarly, the Superior Court explained that "the FRSA regulates the field of railroad safety; the Pennsylvania statute is concerned with highway safety. Thus, we do not find the scope of the FRSA encompasses that of the Pennsylvania statute." *Krentz v. Consol. Rail Corp.,* 865 A.2d 889, 893 (Pa.Super.2004).

Although a case dealing with field, rather than express, preemption, we find the words of the United States Supreme Court in *Gade v. National Solid Wastes Management Association,* 505 U.S. 88, 112 S.Ct. 2374, 120 L.Ed.2d 73 (1992), equally appropriate in the case *sub judice:*

> In assessing the impact of a state law on the federal scheme, we have refused to rely solely on the legislature's professed purpose and have looked as well to the effects of the law.... We can no longer adhere to the aberrational doctrine that state law may frustrate the operation of federal law as long as the state legislature in passing its law had some purpose in mind other than one of frustration. Apart from the fact that it is at odds with the approach taken in nearly all our Supremacy Clause cases, such a doctrine would enable state legislatures to nullify nearly all unwanted federal legislation by simply publishing a legisla-

tive committee report articulating some state interest or policy—other than frustration of the federal objective—that would be tangentially furthered by the proposed state law. Any state legislation which frustrates the full effectiveness of federal law is rendered invalid by the Supremacy Clause.

*Id.* at 105–06, 112 S.Ct. 2374 (internal quotation marks omitted) (quoting *Napier v. Atlantic Coast Line R.R. Co.*, 272 U.S. 605, 612, 47 S.Ct. 207, 71 L.Ed. 432 (1926), for the proposition that "pre-emption analysis turns not on whether federal and state laws 'are aimed at distinct and different evils' but whether they 'operate upon the same object' "); *accord Teper v. Miller*, 82 F.3d 989, 995 (11th Cir.1996) ("[I]t is the **effect** of the state law that matters in determining preemption, not its intent or purpose.").

■ While the U.S. Supreme Court has not had occasion to determine the "subject matter" of a state blocked crossing statute, several other federal courts have done so in a manner that we find persuasive: [16]

"The subject matter of the state requirement" is the safety concerns that the state law addresses. *See Burlington N. R. v. Montana*, 880 F.2d 1104, 1106 (9th Cir.1989). Generally, determining the safety concerns that a state or federal requirement is aimed at will necessarily involve some level of generalization that requires backing away somewhat from the specific provisions at issue. *See Shots v. CSX Transp., Inc.*, 38 F.3d 304, 307 (7th Cir.1994). Otherwise a state law could be preempted only if there were an identical federal regulation, and, as we noted, *Easterwood* teaches that this is not so. *See [CSX Transp. v. Easterwood,]* 507 U.S. [658,] 674, 113 S.Ct. 1732 [1993]; *see also Burlington N. R.*, 880 F.2d at 1106. But with too much generalizing—"public safety" or "rail safety"—our analysis would be meaningless because all [FRSA] regulations cover those concerns.

**16.** Although this Court is not bound by the decisions of the United States District Courts or the Courts of Appeals as to the interpretation of federal statutes, we may look to them for guidance. *See Commonwealth v. Ragan*, 560 Pa. 106, 743 A.2d 390, 396 (1999) (holding as such with respect to federal case law).

*Burlington N. & Santa Fe Railway Co. v. Doyle,* 186 F.3d 790, 796 (7th Cir.1999) (explanatory parentheticals omitted); *accord CSX Transp., Inc. v. City of Plymouth,* 92 F.Supp.2d 643, 650 (E.D.Mich.2000), *aff'd,* 283 F.3d 812 (6th Cir.2002).

Presently, the Krentzes emphasize that "[t]he Secretary of Transportation has not issued any regulations regarding blocked crossings in general. There is no federal statute, rule or regulation limiting the amount of time that a standing train may obstruct a crossing." (Brief of the Krentzes as Appellees at 9). In rejecting a similar argument in *City of Plymouth,* the court noted that the plain language of Michigan's blocked crossing statute "makes clear that the law applies only to railroads and not to any other vehicle or entity which may cause an obstruction at an intersection." *City of Plymouth,* 92 F.Supp.2d at 651. Moreover, the court observed that the statute was codified in the section of the Michigan Compiled Laws dealing with the regulation of railroads rather than in the sections relating to motor vehicles or to highways. *Id.*

Likewise, Section 6907 proscribes "any **railroad** [from] obstruct[ing] . . . the passage of any crossings of a highway" and subjects to criminal liability "any engineer, or any member of the train crew, or other agent of any such railroad." 18 Pa.C.S. § 6907 (emphasis added). Also, Section 6907 is codified at Chapter 69 of Title 18, most sections of which regulate railroads in particular. *See, e.g.,* 18 Pa.C.S. § 6903 (Railroad employee abandoning train); 18 Pa.C.S. § 6904 (Interfering with railroad employee); 18 Pa.C.S. § 6906 (proscribing the erection of "railway-crossing signboards"); 18 Pa.C.S. § 6908 (prohibiting the obstruction of private railroad crossings); 18 Pa.C.S. § 6909 (proscribing the placement of any light that "interferes with the view of any railroad signal"). Significantly, the General Assembly chose not to codify Pennsylvania's blocked crossing statute in either the Motor Vehicle Code (Title 75) or the Highway Code (Title 36).

Thus, the plain language and codification of Section 6907 make clear that the effect of the statute is to regulate the movement of trains. The Krentzes' observation that no FRSA

regulation specifically addresses how long a train may block a crossing is therefore immaterial. The FRSA regulations requiring and specifying the inspection and testing of brake systems direct railroads to alter train movement. Consequently, consistent with other state and federal courts that have considered the subject matter of similar state blocked crossing statutes,[17] we hold that the FRSA brake system regulations cover the subject matter of Section 6907. Therefore, pursuant to Section 106 of the FRSA, we now proceed to determine whether Section 6907 is incompatible with the FRSA brake system regulations.

 We begin by recognizing that this Court has interpreted our blocked crossing statute as merely prohibiting trains from remaining stationary at crossings for an unreasonable period of time. *See, e.g., Coleman v. Dahl,* 371 Pa. 639, 92 A.2d 678, 680 (1952). Thus, in holding that the FRSA does not preempt Section 6907, the Superior Court reasoned as follows:

> All parties agree that [Section 6907] does not prohibit railroads from ever, even momentarily, blocking crossings, but rather prohibits such blocking for an **unreasonable** length of time. The determination of reasonableness of the length of the blocking is a question for the jury. *Blaskey v. Pa. R. Co.,* 138 Pa.Super. 465, 10 A.2d 891, 893–94 (1940). The trial court's analysis presupposes the blocking in this case was unreasonable; while we do not reach the opposite conclusion, we find it possible that the blocking, even if wholly attributable to federal safety regulatory requirements, was for a reasonable length of time. We additionally note that, although there was evidence introduced in this case that the blocking concerned train length and safety requirements, a blocking may be for a reason unrelated to any area of federal regulation. Thus, we find the trial court's holding erroneous.

*Krentz v. Consol. Rail Corp.,* 865 A.2d 889, 894 (Pa.Super.2004).

17. *E.g., City of Plymouth, supra; City of Seattle v. Burlington N.R. Co.,* 145 Wash.2d 661, 41 P.3d 1169, 1174 (2002).

The issue of whether the FRSA preempts Section 6907 cannot be relegated to resolution on such a case-by-case basis. If the liability of a railroad for obstructing a given crossing depended upon the facts of each individual case, then the very essence of the FRSA as a comprehensive scheme of uniform railroad safety standards would be thwarted. *See* 49 U.S.C. § 20101 ("The purpose of this chapter is to promote safety in **every area** of railroad operations . . . .") (emphasis added); 49 U.S.C. § 20106 ("Laws, regulations, and orders related to railroad safety and laws, regulations, and orders related to railroad security shall be nationally uniform to the extent practicable."); *cf. Myers v. Mo. Pac. R.R. Co.*, 52 P.3d 1014, 1025 (Okla.2002) ("Because the FRSA removes from states the authority to establish statewide standards with respect to railroad safety, it preempts any law that creates a general standard by which the reasonableness of a train's speed is to be weighed on a case-by-case basis at any crossing in the state.").

As for the suggestion of the Superior Court that the actual reason for a particular obstruction theoretically could be unrelated to any obligation on the part of the railroad company pursuant to the FRSA, such a case is not before us. With no evidence to the contrary having been introduced, the trial court concluded that "[t]he length of the train and the mandatory brake testing are the reasons the train was blocking the crossing the night [Krentz] struck the train." (Trial ct. Op. at 6–7).

Simply put, the FRSA brake system regulations direct trains to remain stationary, while Section 6907 instructs them to keep moving. Whenever, as in the instant case, the distance between a dead-end spur and a crossing is shorter than the length of the train, compliance with both directives will not be possible. Of course, compliance with federally mandated brake system testing often will not require a train to block a crossing. Nevertheless, the only way to ensure compliance with both the FRSA brake system regulations and Section 6907 as currently worded is for railroads to reconsider the length of their trains. The Commerce Clause, however, does

not tolerate state regulation of train length. *See S. Pac. Co. v. Arizona,* 325 U.S. 761, 775, 65 S.Ct. 1515, 89 L.Ed. 1915 (1945) (noting the "serious impediment to the free flow of commerce" caused by the state regulation of train length). Therefore, we conclude that Section 6907 is incompatible with the brake system regulations issued pursuant to the FRSA. *See* 49 U.S.C. § 20106(2).[18] Accordingly, pursuant to Section 106 of the Act, we hold that the FRSA expressly preempts Section 6907.

### B. The Krentzes' Counterargument Based on Nanty–Glo

As the Krentzes note, Conrail's preemption defense necessarily depends upon the deposition testimony of its own employees to the effect that its train was undergoing federally mandated brake testing at the time it was blocking the crossing. Instead of introducing any evidence to the contrary, the Krentzes counterargue that Conrail may not rely upon the testimony of its employees in moving for summary judgment.

■■■ Pursuant to the well-established principle that we first announced in *Borough of Nanty–Glo v. American Surety Co.,* 309 Pa. 236, 163 A. 523 (1932), "[o]ral testimony alone, either through testimonial affidavits or depositions, of the moving party or the moving party's witnesses, even if uncontradicted, is generally insufficient to establish the absence of a genuine issue of material fact." *Schroeder v. Commonwealth,* 551 Pa. 243, 710 A.2d 23, 25 (1998); Pa.R.C.P. 1035.2, Note (citing *Nanty–Glo* ). A party moving for summary judgment must rely on something more than oral testimony that is essential to its motion because the decision whether to credit such testimony must be made by a jury rather than a judge.

■■■ The Krentzes, however, failed to raise this argument to the trial court in their Brief in Opposition to Conrail's

**18.** In light of our conclusion that Section 6907 does not satisfy the requirement of FRSA § 106(2), we need not determine either whether Section 6907 "is necessary to eliminate or reduce an essentially local safety or security hazard," 49 U.S.C. § 20106(1), or whether Section 6907 "does not unreasonably burden interstate commerce," 49 U.S.C. § 20106(3). *See* 49 U.S.C. § 20106 (requiring all three conditions in order for the state enactment to avoid preemption).

Motion for Summary Judgment. As the Superior Court has repeatedly held, "arguments not raised initially before the trial court in opposition to summary judgment cannot be raised for the first time on appeal." *McHugh v. Proctor & Gamble*, 875 A.2d 1148, 1151 (Pa.Super.2005); *Devine v. Hutt*, 863 A.2d 1160, 1169 (Pa.Super.2004); *accord Grandelli v. Methodist Hosp.*, 777 A.2d 1138, 1147 (Pa.Super.2001); *Harber Phila. Ctr. City Office Ltd. v. LPCI Ltd. P'ship*, 764 A.2d 1100, 1105 (Pa.Super.2000); *Payton v. Pa. Sling Co.*, 710 A.2d 1221, 1226 (Pa.Super.1998); *Staiano v. Johns Manville Corp.*, 304 Pa.Super. 280, 450 A.2d 681, 687 (1982); *accord Bruce v. Commonwealth*, 138 Pa.Cmwlth. 187, 588 A.2d 974, 979 (1991), *petition for allowance of appeal denied*, 533 Pa. 626, 620 A.2d 492 (1993). Recently, the Superior Court specifically held that a plaintiff waived the very same *Nanty–Glo* argument that the Krentzes now make by failing to mention the principle when opposing a motion for summary judgment. *Lineberger v. Wyeth*, 894 A.2d 141, 149 (Pa.Super.2006).

As the Superior Court has explained, "[t]his proposition is consistent with our Supreme Court's efforts to promote finality, and effectuates the clear mandate of our appellate rules requiring presentation of all grounds for relief to the trial court as a predicate for appellate review." *Id.* at 148 (quoting *Devine*, 863 A.2d at 1169); *see also Keystone Bldg. Corp. v. Lincoln Sav. & Loan Ass'n*, 468 Pa. 85, 360 A.2d 191, 194 (1976) (deeming contention waived due to appellant's failure to raise it before appealing to this Court); *Commonwealth v. Dennis*, 548 Pa. 116, 695 A.2d 409, 411 (1997) ("[T]rial courts should be given the opportunity to correct an error and conserve judicial resources."). Accordingly, the Krentzes' argument based on *Nanty–Glo* is waived in light of their failure to present it to the trial court in their Brief in Opposition to Conrail's Motion for Summary Judgment.

## *CONCLUSION*

Consistent with many other federal and state courts that have considered the effect of the FRSA on state blocked

crossing statutes,[19] we now hold that Section 6907 is preempted by the FRSA and is therefore unenforceable in this Commonwealth. Accordingly, the negligence *per se* claim of the Krentzes fails as a matter of law, and the trial court did not err in granting Conrail's Motion for Summary Judgment, thereby dismissing Count II of the Complaint.

The Order of the Superior Court is reversed to the extent that it reversed the December 31, 2002 Order of the trial court granting Conrail's Motion for Summary Judgment and is affirmed in all other respects.

Chief Justice CAPPY and Justice CASTILLE, SAYLOR, EAKIN and BAER join the opinion.

Justice BALDWIN did not participate in the consideration or decision of this matter.

---

**19.** *See, e.g., CSX Transp., Inc. v. City of Plymouth,* 283 F.3d 812, 817 (6th Cir.2002); *CSX Transp., Inc. v. City of Mitchell,* 105 F.Supp.2d 949, 952 (S.D.Ind.1999); *Rotter v. Union Pac. R.R. Co.,* 4 F.Supp.2d 872, 874 (E.D.Mo.1998); *City of Seattle v. Burlington N. R. Co.,* 145 Wash.2d 661, 41 P.3d 1169, 1175 (2002).